## Commonwealth et al. v. Ball et al.
## Same v. Baker et al.
## Same v. Howard et al.

(Decided Dec. 16, 1932.)

J. B. CARTER for appellants.

GEORGE R. POPE for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

These appeals from judgments in condemnation proceedings for highway purposes have been consolidated, and will be considered in one opinion.

In the Ball Case, the commissioners fixed the damages at $500. The jury in the county court fixed the damages at $700. On appeal to the circuit court, the jury fixed the damages at $2,250. The Balls own several acres on the old county highway leading from Harlan up Martin's Fork, and located about a quarter of a mile from the city limits. The improvements on the land included a substantial brick residence and two frame residences, one of which was burned before the property was taken. In front of the property was a large lawn covered with grass, shade trees, flowers, shrubs, and hedge. Being in proximity to the city the

land was suitable and valuable for residential purposes. The land taken consisted of a strip facing the highway in front of the improvements about 700 feet long and about 25 feet wide. In addition to the strip, there were taken shrubbery, shade trees, and 750 feet of fence, and also a hedge fence about 200 feet in length. Mr. Ball fixed the market value of the land taken at from $2,100 to $2,250, and the damages to his adjacent property at $1,500. In addition to this, he testified that it cost him $75 to move the fence back, $70 to move one of the houses off his right of way, and that a well which cost him $192 to drill was taken. He further testified that his entire tract was worth $20,000 prior to the taking, and only $14,000 or $15,000 thereafter. Daisy Cawood fixed the value of the strip of land taken at $2,000 and the value of the remainder of the land at $25,000 before the taking, and $21,000 after the taking. There was further evidence by a surveyor that after the taking there was a high fill in front of the property, making it less accessible to the highway and less desirable for a home. J. J. L. Smith, who hauled coal, ice, and moved people, testified that the property was easily accessible before the road was constructed, but that after the construction he could not get into the property with a load of coal or hay. On the other hand, H. H. Bennett, one of the commissioners appointed by the county court to view the property, fixed the value of the land taken at $150, and stated that after the road was built through there the property was worth more than it was before. S. B. Douglas fixed the damages at from $700 to $800, and gave it as his opinion that the building of the road improved the property. It was also shown that the land taken was about 32/100 of an acre.

The Barker land, which is suitable for business and residential purposes, is about a quarter of a mile from Harlan on the old Martin's Fork highway. On this is constructed a concrete block house with a lawn between it and the old road. He had also built on his property a garage and service station. The land taken consisted of a strip 75 feet long and 25 feet wide in front of the residence and garage. The strip taken reached back to within a few inches of the garage, and included the porch of the residence and a well 105 feet deep. The taking resulted in a deep fill in front of the property, thus making egress and ingress quite difficult, if not impossible. The commissioners fixed the dam-

ages at $100. The jury in the county court fixed the damages at $550. On appeal to the circuit court, the jury fixed the damages at $1,500. Mr. Barker fixed the value of the land taken at $450, the value of the entire property before the taking at $8,000, and at half that amount after the road was constructed. He also fixed the value of the well at $350. He further testified that his cold storage bin, 10 feet wide by 27 feet long and 10 feet high, was taken, and that the passway leading up to his two-story garage was rendered impassable by the new fill. On the other hand, the tax commissioner testified that W. B. T. Barker had three lots listed at $150, and improvements at $300, and two more lots at $100. S. B. Douglas, one of the commissioners, fixed the damages at from $700 to $800. Ed Pollitte, another commissioner, fixed the value of the land actually taken at $25.

The Howard land consisted of four lots located in Dressen, less than half a mile from the limits of Harlan. On three of the lots are dwelling houses, and on the other lot a garage building. The land taken consisted of a strip 25 feet wide in front of the house. Two of the dwelling houses and two garages had to be moved. The fencing had to be moved, and some shade trees were destroyed. The porch on one of the houses was taken. The lots do not adjoin. According to appellee, there was a strip taken off the first lot 25 feet wide and 125 feet long. The garage had to be torn down because there was no place to put it after the strip was taken and the fill placed in front of the lots. The fill was so high that no part of the lots could be used for building. The strip of land taken was worth $800, and the garage was worth $120 or $125. This particular property was worth $2,000 before, and only $1,000 after, the road was built. The next piece of property consisted of a five-room house. The strip taken was 50 feet long and 25 feet wide, which carried it back to the walls of the house, taking off the front porch and destroying the land, shade trees, and yard fence. The strip taken was worth $200, and he had to go to the expense of moving one garage off the strip. This piece of property was worth $1,500 before, and only $1,000 after, the taking. The next piece of property fronted the road 75 feet. The dwelling house had to be moved back at a cost of $100. The strip taken was worth $200. Before the taking, the property was worth $2,000, and after the taking only $1,500. The next piece of property faced

the road for 102 feet, and the strip taken was 25 feet wide. The dwelling house had to be moved back at a cost of $100. The strip taken was worth $300. This property was worth $1,500 before, and $1,000 after, the taking of the land. All the land taken, consisting of several lots, was worth $1,500. The damages to adjacent property amounted to $3,000. The moving of the houses and garages cost $325. Another witness testified that after taking the property was not as accessible as it was before. On the other hand, H. H. Bennett fixed the value of the land taken at $50, and stated that the property was worth more after the road was constructed. The county assessor testified that Howard had listed for the year 1932, 19 lots at $1,150, improvements $2,075—total, $3,225.

The jury in each case went out and viewed the property.

The first ground urged for a reversal is that the verdict in each case was excessive. The amount of the damages in condemnation proceedings is peculiarly a question for the jury, and its verdict will not be disturbed unless so excessive as to show passion or prejudice, or unless based on estimates unsupported by the physical facts, or so extravagant as to carry with them the improbability of their correctness. Commonwealth v. Anderson, 228 Ky. 90, 14 S. W. (2d) 392; Louisville & N. R. Co. v. Burnam, 214 Ky. 736, 284 S. W. 391. These cases do not fall within any of the exceptions. The verdict in each case is not only well within the limits fixed by the witnesses, but finds support in the physical facts shown by the witnesses and observed by the juries. In the circumstances it cannot be said that the verdicts are excessive.

In the Ball Case complaint is made of the admission of evidence in regard to a four-room house which was located on the land condemned, and was burned before possession was taken, and the failure to give an instruction excluding the house as promised by the court. We find, however, that the court in other instances did exclude the evidence as to the burnt house, and, as Ball offered no testimony in regard to the value of the house, it is not to be inferred that the jury took the house into consideration in fixing the damages. In the circumstances, the failure to instruct as to the burnt house was not prejudicial to appellants' substantial rights.

It is also insisted that the court erred in the Ball Case in permitting a witness, in answer to the question whether or not the state highway would have a right to place the waste dirt in front of Mr. Ball's property, to state, "Ordinarily they have got to dispose of that dirt, and usually put it in the closest place they can." As the placing of the dirt in front of the property would have the effect of decreasing rather than increasing the damages to the remaining land, it is not perceived how the admission of the evidence was in any way prejudicial to appellants.

In the same case there is the further complaint that the court erred in permitting a witness, in answer to the question, "If the roadbed was increased from 22 to 30 feet, what effect would it have on Mr. Ball's property?" to say, "The more width you put the higher it makes the fill next to Mr. Ball's property, that is higher above his lawn." The basis of the objection is that the width of the roadbed was only 22 feet. That may be true, but, as the highway department has the right to extend the width at any time so it does not go beyond the limits of the strip taken, it was not error to lay before the jury the probable effect of such extension.

In the Barker Case a witness testified that Barker would have to move his house back from 30 to 50 feet, and estimated the cost at $3,600. One of the questions in the case was the damage to the remainder of the property, and we perceive no reason why the cost of moving the house was not a proper element to be considered by the jury.

There is complaint of the instructions, but, as the record in each case discloses that they were not challenged in the motion for a new trial, they cannot be reviewed on appeal. Greer v. Farrar, 223 Ky. 564, 4 S. W. (2d) 367.

The judgment in each case is affirmed.