# Tennessee Gas Transmission Co. v. Huddleston et al.

May 12, 1950

W. H. Spragens, Judge.

834

Geo. O. Bertram and Fred Faulkner, for appellant.

Abel Harding and G. J. Rice for appellees.

STANLEY, COMMISSIONER—Reversing.

The appellant, exercising its right of eminent domain, condemned 3.97 acres belonging to the appellees, W. B. Huddleston and wife, for the purpose of constructing and maintaining a reservoir for the impounding and storage of water for the operation of a gas compression station. The court properly limited the recovery to the fair cash value of the land, considering its relation to the defendants' entire tract of 97 acres, defined also as being the difference between the fair market value of the defendants' entire farm immediately before and after the taking of the 3.97 acres. There is no evidence of incidental damage or enhancement of the remaining land.

The verdict was for $2,500, or $625 an acre, the maximum permitted by the instructions.

The evidence as to the particular character of the approximately four acres and its connection and use with the rest of the farm is not clear. It appears to be part of a ravine with steep cliffs on each side, some pasture, but little tillable soil. It contains ten or twelve walnut trees, 12 to 18 inches in diameter, but we understand the defendant is entitled to the logs. This parcel is but part of the reservoir property, 21½ additional acres having been acquired from two adjoining landowners. The surface of the proposed lake will be about ten acres. The nearest water's edge will be approximately three hundred feet from the defendant's residence and one hundred feet from his barn. The defendant and some of the neighbor witnesses seemed to think the taking of the land and the dam to be built will make it more difficult for his livestock to reach a spring below the dam, while the engineers testified that it will really be more easily reached down the outside wall of the earth dam. It is implied in the record and the argument that the defendants will have the privilege of using the lake for livestock, though there is no specific testimony on the point. Huddleston and another witness expressed the view that it is better for stock to have access to running water, but this seems to compare a stream to a pond. Here will be a large lake without stagnant water.

The estimates of fair cash value of the land to be taken, as is usual, are extremely variant.

The defendant, Huddleston, placed $5,000, or $1,250 an acre, as the value of the 3.97 acres, the whole farm being worth $20,000 before and $15,000 after this parcel is taken. However, the value for taxation of the whole farm is $4,000, or about $40 an acre. Four neighbors agreed the 3.97 acres were worth $5.000. One, who was probably confused, first stated it was worth $175 an acre but ended up by placing $17,475 as the value of the small parcel. Another witness placed it at $10,000.

On the other side, five neighbors placed the value at from $150 to $250 an acre. A Campbellsville real estate agent, from his knowedge of the Huddleston farm and of values in Taylor County generally, thought the 3.97 acres were worth only $400, the entire farm of 97

acres being valued at $200 an acre or $19,400, and the remaining 93 acres at $19,000. The jury viewed the premises and this fact is to be given full consideration in reviewing the parol evidence on the question of the reasonableness of their verdict. Bailey v. Harlan County, 280 Ky. 247, 133 S. W. 2d 58.

We realize there is opinion evidence or estimates that would warrant an award of $2,500, but there is no state of facts, with description of the land, its quality or relation to the entire farm, that would justify the extravagant estimates of value placed by the defendants and their witnesses or the award of the jury. The record is silent as to what comparable land has sold for in recent years. The farm should be considered as an entity in assessing compensation for the taking of a part of it. On the basis of the verdict, this means the 97 acres has a fair cash market value of $60,625. We are aware that as a practical matter, there is and must be some regard had for the fact that one's property is being taken from him by force of governmental power for the good of the people as a whole or because of common necessity and interest; also, that consideration is given to the value of the land to the corporation requiring and taking it. These circumstances are always present. Though neither is expressly recognized judicially, as a matter of reality there is no escape from it, and jurors undoubtedly give much weight to it in determining what is just compensation. We have a notion that the condemnor always expects that. Even with our appreciation of this fact, we are of opinion that the award is grossly excessive.

The attitude of this court is thus well stated in Commonwealth v. Ball, 246 Ky. 584, 55 S. W. 2d 413, 415: "The amount of the damages in condemnation proceedings is peculiarly a question for the jury, and its verdict will not be disturbed unless so excessive as to show passion or prejudice, or unless based on estimates unsupported by the physical facts, or so extravagant as to carry with them the improbability of their correctness."

This verdict strikes us as manifesting unfairness and prejudice against the corporation and favoritism for the jurors' neighbor where deliberation and judg-

ment should have prevailed. This showed itself at least on the part of one member of the jury. Before the first witness, an engineer for the company, could be asked a single question, a juror opened up the examination by asking him whether the proposed dam and lake would not interfere with the Huddleston spring.

The judgment is accordingly reversed.