CORNWELL, et al. v. CENTRAL KENTUCKY NATURAL GAS CO.

Court of Appeals of Kentucky.
May 30, 1952.

532

natural gas to Lexington and surrounding towns in central Kentucky. Underlying land in Powell, Montgomery and Menifee Counties at a depth of from 400 to 600 feet is a geological formation of porous rock known as the corniferous lime stratum. Gas was discovered in this formation in 1904 and by 1912 the field was producing sufficiently to supply Lexington and other towns. By 1919 this natural gas supply was seriously depleted, the rock pressure having dropped from 90 pounds to 28 pounds. As an experiment the company purchased natural gas from wells in eastern Kentucky and West Virginia, piped it to Menifee County and pumped it back into the corniferous lime through the old producing wells which had become depleted. Thus, the field in Menifee County which had formerly been a producing one became a storage field. In Hammonds v. Central Kentucky Natural Gas Co., 255 Ky. 685, 75 S.W.2d 204, this court held that when natural gas was stored in natural repositories underground, it was no longer the exclusive property of the one who stored it, but belonged to anyone who recovered it.

This Hammonds opinion made it necessary not only for the company to be the owner of the underground storage, but to make certain that this storage does not leak, else it would be putting gas under lands which could be produced and marketed by others. Through repeated experiments the company extended the original storage field from 18,000 acres to 41,000 acres, all of which it has under lease except appellants' farm in Menifee County, and it brought this condemnation proceeding under KRS 278.501 to acquire that. A jury trial in Menifee County Court resulted in a verdict for appellants of $1.25 an acre per year and 2000 cubic feet of gas annually. The company appealed to the Menifee Circuit Court and on a de novo trial there the jury returned a verdict for appellants for $1000.

The General Assembly in 1948 repealed KRS 278.500 and in its stead enacted KRS 278.501. See Acts of 1948, Chapter 184, p. 433. Section 278.500 provided any company organized for the purpose of constructing, maintaining or operating oil or

Squire N. Williams, Sr., Frenchburg, for appellants.

Lewis A. White, Mt. Sterling, for appellee.

SIMS, Justice.

This is a condemnation case wherein appellee, Central Kentucky Natural Gas Company, hereinafter called the company, condemned under KRS 278.501 the underground gas storage in appellants' farm of 119.56 acres located in Menifee County. The jury returned a verdict for appellants in the sum of $1000 and they seek a reversal of the judgment entered thereon because: 1. The statute is unconstitutional under which this condemnation is authorized; 2. the instructions given by the court were erroneous; 3. the verdict is contrary to the weight of the evidence.

A brief background of the case will help in understanding it. The company supplies

gas wells, or pipelines for transporting or delivering oil or gas, might condemn lands or rights in lands that were necessary for constructing, maintaining or operating pipelines, and all necessary pumping stations, appliances, etc. The only difference between KRS 278.500 and KRS 278.501 is that the latter extended the right of condemnation to "recognized underground gas storage fields".

■ Appellants concede K.S. § 3766b–1 (which later became KRS 278.500) was declared to be constitutional in Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S. W. 328, 33 Ky.Law Rep. 98, 36 L.R.A.,N.S., 456, and in Kentucky Heating Co. v. Calor Oil & Gas Co., 146 Ky. 414, 142 S.W. 728. But they contend that KRS 278.501 is unconstitutional in that it deprives appellants of their property without just compensation in violation of § 13 of our Constitution, since the Act does not compensate them for any natural gas that might be under their land. We cannot agree with appellants in this contention. The record shows the company has no right to drill or produce gas from appellants' land and the sole right it gets through condemnation is to store gas it pumps into the corniferous lime stratum in appellants' land. Appellants will not be deprived of their right to drill and produce oil or gas from their land, except they cannot produce either mineral from the corniferous lime stratum, which they must case off should they drill.

■ The right of eminent domain has been called one of the highest powers of government and is an attribute of society. It is inherent in the State alone. The theory upon which the exercise of the power is justified being that the rights of the individual must yield to considerations of the public good and common welfare. 29 C.J.S., "Eminent Domain", § 2, page 777. In this jurisdiction the State applied eminent domain in acquiring roads, then the right was given to railroads, telephone companies and other public utilities, and then to pipelines; and lastly, so far as we are aware, to the acquisition of airports. Then in 1948 the General Assembly granted to companies transporting or distributing natural gas the right to condemn underground gas storage fields. Well it may be said that the right of eminent domain is not static but has kept abreast with scientific and technological progress. The storage of natural gas under ground is a comparatively new method of handling gas, but it is a method which is of great benefit to the public, and the General Assembly has as much right to allow the power of eminent domain to companies needing "recognized underground gas storage" as it has to allow condemnation of the surface of land for the storage of natural gas.

■ Appellants' motion for a new trial did not include any complaint as to the instructions, therefore we cannot consider them on appeal. A familiar rule is that erroneous rulings on instructions must be embraced in a motion for a new trial, else they cannot be considered on appeal. Chesapeake & O. Ry. Co. v. Wendt, Ky., 121 S.W. 661; Fidelity & Casualty Co. of New York v. Carson, 206 Ky. 136, 266 S.W. 1063; Tate v. Canary Cottage, 302 Ky. 313, 194 S.W.2d 663.

Nor is there merit in appellants' contention that the verdict is contrary to the weight of the evidence. The company proved by several witnesses the fair market value of this storage in the corniferous lime formation was 50¢ per acre per year; and while it was condemned "from now on", to use the words of the learned trial judge, the company contemplated using it not exceeding 20 years and it was stipulated that when the company ceased using this corniferous lime formation for storage purposes, same would be surrendered to appellants. The company's witnesses testified the present market value of the right condemned was from $586 to $685. Furthermore, the company proved there was a production lease on this land which gave the lessee the right to enter thereon and drill, and under that lease appellants were paid only 50¢ per acre per year. As the company has no right to enter on the surface of the land or to drill thereon, the storage right condemned certainly is not worth as much as a production lease.

■ Andy Cornwell testified he bought this land in 1940 for "around $2000". The jury awarded him $1000 for the storage

rights, which is one-half of the value of the farm and from $335 to $414 more than the company's witnesses testified was the value of the storage rights condemned. It cannot with reason be said the verdict is not sustained by the weight of the evidence. True, appellants produced witnesses who testified the right condemned was worth from $1 to $2 per acre per year, and there was a sharp issue as to the value of the condemned storage right. The rule in condemnation cases is that the amount of damages is a question for the jury, and its verdict will not be disturbed unless it is so out of line as to show passion or prejudice or is unsupported by physical facts. Com. v. Ball, 246 Ky. 584, 55 S.W.2d 413; Kentucky Bell Corp. v. Com., 295 Ky. 21, 172 S.W. 2d 661. Manifestly, the verdict in the instant case is amply sustained by the evidence.

Appellants complain because the court did not instruct on the question of damages to the rest of the farm by reason of the company taking the gas storage, citing such cases as Kentucky Hydroelectric Co. v. Reister, 216 Ky. 303, 287 S.W. 357; Tennessee Gas & Transmission Co. v. Jackman, 311 Ky. 507, 224 S.W.2d 660. This contention may be answered by saying first that appellants did not include in their motion for a new trial any complaint of the instructions; and secondly, there was no evidence of resulting damages. Also, appellants insist they should have been awarded a sufficient amount of free gas for domestic use. But the proof here is that such gas is only given in production and not in storage leases.

The judgment is affirmed.