COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

A. F. BLANTON, Appellee.

Court of Appeals of Kentucky.

Jan. 27, 1961.

Rehearing Denied Jan. 26, 1962.

John B. Breckinridge, Atty. Gen., H. D. Reed, Jr., Chief Asst. Atty. Gen., Lawrence L. Pedley, Attorney for Highway, Frankfort, for appellant.

J. G. M. Robinson, Ashland, George Gallup, Catlettsburg, for appellee.

CULLEN, Commissioner.

The Commonwealth of Kentucky, Department of Highways, appeals from a judg-

ment awarding A. F. Blanton $16,200 for property taken and damages to the remainder of his property in the condemnation of a strip of land for the purpose of widening a highway in the City of Ashland. The jury made a segregation of the damages in its verdict, awarding $9,000 for the land taken and $7,200 as damages to the remaining property. The appellant contends that the damages are excessive in that they embody an allowance of double damages for the same item, and that certain evidence was improperly admitted.

Blanton's property consisted of a large lot with a frontage of some 100 feet, occupied by a six-unit apartment house. Between the front porch and the original street was an area around 35 feet in depth, used primarily as a parking area for the cars of the tenants of the apartment house. The condemnation would take for permanent use a strip between 16 and 20 feet in depth, extending across the entire front of the lot and adjoining the original street. This would leave Blanton with an area some 15 to 19 feet in depth between the new street and his front porch. (The condemnation also would take two triangular pieces on one side of Blanton's lot, one temporarily and the other permanently, and a strip across the front of his lot for a temporary easement for construction purposes, but none of the witnesses placed any specific value on these items.)

There was room on one side of the apartment house to construct a new parking area, but this would require a substantial amount of filling and the construction of drains, retaining walls and steps.

The witnesses for the Commonwealth estimated the value of the land taken at around $1,000, and the damages to the remainder of the property at around $6,500. The witnesses for Blanton (including Blanton himself) all testified that the difference between the value of the apartment property before the taking and its value after the taking was around $18,000. The main controversy on this appeal relates to the factors given by these witnesses as having been taken into consideration by them in arriving at their estimates of the difference in value. The Commonwealth contends that the witnesses used the same factor twice, with the result that their estimates included a duplication of one item of damage. We think the point is well taken.

The item of damage in question is the loss of the parking area. It appears that Blanton's witnesses based their estimate of the value of the land taken on its use as a parking area, and then based their estimate of the damages to the remainder of the property on the fact that the parking area was taken.

Blanton testified that in reaching his estimate of $18,000 as the difference in value he took into consideration the loss of rental value that would result from "taking the parking place away" and that he also considered the fact that it would be necessary for him to construct a new parking area.

Henry Collingsworth estimated the difference in value at $17,800. He said that he was allowing $9,800 for the land taken and $7,778 for damage to the remainder. He stated that the estimate of $9,800 for the land taken was based on the fact that it was used for a parking area and "it would take $9,800 to replace that." At the same time he testified that his estimate of $7,778 as damages to the remainder was based upon "damage to the building from the accessibility to and from another parking area," and that he took into consideration that other parking facilities would have to be established.

Oscar Rupert fixed the difference in value at $17,500, consisting of $8,500 for the land taken and $9,000 as damages to the remainder. He stated that in reaching the figure of $8,500 for the land taken he considered its usefulness for parking, and that "when you cut all that off and throw the building closer to the street—and being as handy to park as it now is—just drive right in and park—you would have to have anoth-

er parking lot, and I feel, everything all told, about $8,500 for taking this front off, and the damage to the building." When asked what he would allow for damages to the remainder he said: "Well, you have to have a parking space. You can't rent without a place to park, so the estimate I have on fixing a parking lot is $9,000."

Clem Brumfield estimated the difference in value at $17,761, which included $9,800 for the land taken and $7,200 for damages to the remainder. He stated that the $9,800 was "for the taking of that parking space in front of the building," and that his estimate was based upon its value for a parking area. He gave no basis for his estimate of $7,200 for damages to the remainder of the property.

E. G. McGuire made an estimate of $18,000 as the difference in value, and stated that in arriving at that figure he considered that "It would be doing away with the front parking lot and making other arrangements for parking, which you'd have to do."

■ In evaluating the testimony of these witnesses, their estimates as to the difference in the value of the property before and after the taking must be considered in the light of the facts given to support the estimates, and the elements of value that were included. Tennessee Gas & Transmission Co. v. Jackman, 311 Ky. 507, 224 S.W.2d 660; Commonwealth Department of Highways v. Rankin, Ky., 346 S.W.2d 714. So if the witnesses included one element of value twice, then overall estimates must be discredited to that extent.

■ It is true that when a portion of a tract of land is taken in condemnation the value of the portion taken is to be measured with reference to the entire tract, West Virginia, P. & T. R. Co. v. Gibson, 94 Ky. 234, 21 S.W. 1055, or, stated another way, considering its relation to the entire tract. Tennessee Gas Transmission Co. v. Huddleston, 312 Ky. 833, 229 S.W.2d 983. Therefore, the fact that the land taken here was used as a parking lot for the apart-

ment house could in ordinary circumstances be considered in determining its value, and it is plain that the witnesses for the landowner did give primary consideration to such use.

It also is true that the landowner is entitled to damages to the remainder of his tract in addition to the value of the land actually taken. KRS 177.083.

■ It must be obvious, however, that if in valuing the land *taken* its use as a specific facility is considered, and the damages for the *taking* are thus computed on the basis that the owner is being deprived of that facility, the loss of the facility taken cannot be again considered as part of the damages to the remainder of the tract. It seems to us that the situation here is no different from that in Smick v. Commonwealth, Ky., 268 S.W.2d 424, where the landowner's garage was taken and paid for, and he sought to recover in addition the expense of building a new garage.

A similar situation also was presented in. Commonwealth v. Conatser, Ky., 329 S.W. 2d 48, where there was located upon the land taken a septic line and tank that served a dwelling house on the remaining tract. This Court recognized that it would not be proper to include this item twice, once in valuing the land taken and again in assessing damages to the remainder, but found that no such duplication had in fact occurred because the trial judge had admonished the jury to consider the septic line and tank only as they related to the damage to the remaining property and because it was clear that the witnesses had not included the item twice in their estimates of damages.

■ In the instant case, in estimating around $9,000 as the value of the land taken from the appellee, his witnesses expressly stated that they were basing their estimates on the use of the land for a parking lot, and in doing so they necessarily were allowing damages on the basis of the reduced value of the apartment building that would result

from not having a parking lot. So when they estimated the damages to the remainder of the property on the basis of the necessity to have a new parking lot they were duplicating the same item of damages. See Smick v. Commonwealth, Ky., 268 S.W. 2d 424; Greenup County v. Redmond, Ky., 335 S.W.2d 335; Commonwealth Department of Highways v. Rankin, Ky., 346 S.W. 2d 714.

■ With the improper duplication eliminated the evidence is not sufficient to support the amount of damages awarded by the jury. Accordingly, the judgment must be reversed for excessiveness of damages.

■ The appellant maintains that evidence as to the cost of building a new parking lot should not have been admitted, either as bearing on the value of the land taken or as bearing on the damages to the remainder. Under the decisions in Smick v. Commonwealth, Ky., 268 S.W.2d 424, and Greenup County v. Redmond, Ky., 335 S.W. 2d 335, such evidence was not admissible as bearing on the question of damages to the remainder, because a necessity for a parking lot was not created by the condemnation. It is true that in Commonwealth v. Conatser, Ky., 329 S.W.2d 48, it was held that evidence as to the cost of constructing a new septic line and tank was admissible as bearing on the reduction in market value of the remainder, but this was because the septic facilities were essential to the extent that the dwelling on the remaining property could not be used and occupied without them. Here the parking lot is not in the category of an absolute necessity but is merely a desirable convenience, the same as was the garage in the Smick case and underpass in the Greenup County case. This conclusion is supported by the testimony of Blanton that the apartments are still rent-able (but at a reduced rate) without the parking lot.

Nor was the evidence admissible as bearing on the value of the land actually taken, not only because the general rule prohibits admission for such purpose, Commonwealth, by State Highway Commission v. Begley, 261 Ky. 812, 88 S.W.2d 920, but because in the instant case the evidence given as to the cost of constructing a new parking lot would not properly reflect the value of the lot taken, in that the construction of a new lot would require a substantial amount of filling and the erection of retaining walls, drains, etc.

We do not mean to say that the loss of the parking facilities is not entitled to any consideration at all. It is entitled to consideration in the overall question of reduction of market value, but not twice, and not by proof of the cost of replacement. Nor do we mean to suggest that the loss of the parking facility is the only element of damage in the case—the trouble is that it is the only element that was given any significant value by the witnesses, and they included it twice.

Under the peculiar circumstances of this case we think that the true damages can best be ascertained by requiring the witnesses to estimate the market value of the land taken without regard to its particular use as a parking lot (obviously it does have some value apart from such use). Their estimates of the reduction in market value of the remaining property then properly may take the matter of parking facilities into consideration as an element of incidental loss that will result from the taking. If the evidence is so limited the standard instructions that were given will be adequate.

The judgment is reversed with directions for a new trial.