108 N.W.2d 89 (1961)
171 Neb. 879
Petition of the NEBRASKA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC., a cooperative corporation, etc.
George MOYER et al., Appellee,
v.
NEBRASKA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC., a cooperative corporation, Appellant.
No. 34906.
Supreme Court of Nebraska.
March 17, 1961.
Kenneth M. Olds, Donald R. Reed, Wayne, for appellant.
Moyer & Moyer, Madison, Frederick M. Deutsch, Norfolk, for appellees.
Heard before SIMMONS, C. J., and CARTER, MESSMORE, YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.
SIMMONS, Chief Justice.
This is a condemnation case. The Nebraska Electric Generation and Transmission Cooperative, Inc., a cooperative corporation, *90 condemnor, will be referred to as the defendant.
The defendant brought condemnation proceedings for a right-of-way for a 230,000 volt transmission line across lands owned by George and Earl Moyer. Their wives and their tenant are also parties. The appraisers allowed $1,500 in damages. The Moyers appealed to the district court. The Moyers will be referred to as plaintiffs.
The action was tried to the district court, a jury having been waived. It resulted in a judgment for the plaintiffs for $6,975. We reverse the judgment and remand the cause for a new trial.
Plaintiffs Moyer are the owners of the northeast quarter, the east half of the northwest quarter, and the northwest quarter of the northwest quarter of a section of Madison County land. For many years it has been farmed as a unit operation.
Defendant condemned a right-of-way for a transmission line across said land beginning at a point west of the northeast corner of the northwest quarter, thence running southeast across the northeast quarter of said land to a point east of the southwest corner of the southeast quarter. In short, the transmission line ran diagonally northwest to southeast across the approximate center of the farm.
The defendant condemned only the land taken by the poles and the right to maintain said line across said land.
There were to be five structures of two poles each set 20 feet apart carrying three wires and two shield wires. Only one of the structures is in the northwest quarter of the land. Defendant also condemned the right of ingress and egress to construct, operate, or remove said lines.
The land involved consists in part of 30 acres of pastureland, 10 acres of land used as the farmstead, and 1 acre used as a cemetery. The farmstead is in the southeast corner of the land and about 50 rods from the transmission line. The cemetery is west thereof and in the southwest corner of the land. The cultivatable land remaining is 239 acres. The lay of the land is such that it is farmed east and west. Corn and oats appear to be the principal crops. All witnesses agree that it is a highly productive farm.
By stipulation the element of future damages was reserved and not considered.
The trial court rendered judgment for the plaintiffs for $6,975.
The two poles of each structure are set perpendicular to the transmission line direction, which makes them at an angle to east-and-west lines and at an angle to north-and-south lines.
The corn rows run east to west. Before the poles were erected on the land there was nothing to interfere with straight-line farming operations.
The testimony indicates that there are five structures on plaintiffs' land. However, the south structure is either astride the fence row or close to it. The tenant refers to three structures in his cornfield.
The north structure is in the pasture. There is no contention that it interferes in any way with the farming operations. There is evidence that the three or three and one-half structures in the fields create areas of untillable land, elliptical in form, which are about 50 feet long and 40 feet wide at the widest point. The evidence is that the farming operations are conducted by tractor power with machinery that projects wider than the tractor. The evidence indicates that the size of these tracts is based on the distance from the poles of tractor operations, and not the distance of plowing, planting, or cultivating from the poles. There is evidence that the actual land taken out of cultivation is a much smaller area than that above stated.
We are here dealing with the inconvenience of farming operations around those three and one-half uncultivatable areas of *91 land and the depreciation that their existence causes to the value of the land as a unit. We find no evidence of the amount of loss involved in the lack of production in the above areas.
There is evidence that to keep the rows straight it is necessary to make some short corn rows and turn-arounds. There is no evidence of the number of such rows or the amount of land removed from production by such a process of farming, unless it is contained in the size given for the larger pieces described above. There is no evidence that the short rows or the turn-arounds affect the productivity of the remainder of the tillable land. There is no evidence that the method of farm operation caused by the structures in anywise costs the plaintiffs expense or lack of revenue save for the small area involved in the three and one-half elliptical structures. The evidence affirmatively refutes any loss of productivity from the structure in the 30-acre pasture. The evidence does not show any damage to the 10 acres involved in the farmstead area or the 1 acre involved in the cemetery area.
There is evidence that the structures have been built according to approved safety practices. We find no evidence to which any finding of damages for fear of danger from that source can be allocated, although some hazard to human beings and animals exists from the presence of the line.
There is evidence that the 239 tillable acres of land are irrigable. There is no evidence of any intent to irrigate. The evidence of availability of water for irrigation is speculative and conjectural. There is evidence that if large-nozzle spray irrigation is ever undertaken that irrigation in close proximity to the lines would contain an element of danger, but that so far as this record is concerned is purely speculative.
There is evidence that weeds will grow around the structures and that it will require about 12 hours' work per year to cut them by hand two times to prevent the spread of weed seed onto cultivated land. We find no evidence that this will either add materially to the cost of operation or reduce the revenue from the land. It would appear to be nothing more than is involved in cutting of weeds along fence rows.
Plaintiffs offered the evidence of two expert witnesses who fixed the fair market value of the land at $225 per acre before condemnation, and $190 per acre after condemnation, a difference of $35 per acre. The plaintiffs offered another witness who fixed the damage per acre at between $30 and $40 per acre.
Defendant offered the evidence of two expert witnesses who testified that the value of the land in the northwest quarter of the section had not been reduced at all, and that the value of the 160 acres of land in the northeast quarter of the section had been reduced not to exceed $15 per acre.
It appears from the pleadings that defendant will have the right of ingress and egress upon said land. No attempt appears to have been made to evaluate the damage to the plaintiffs by that right.
It does not appear by what process the trial court arrived at its finding of damages. For the purposes of this case we accept the defendant's contention that the trial court's finidng has the impact of a jury's verdict. It does appear that the amount allowed the plaintiffs followed the base of the evidence and amounts to $25 per acre, which is the mean between the evidence of the plaintiffs and that of the defendant. The judgment is the equivalent of $25 per acre damage to tillable land, pasture, and farmstead.
We have held that: When the evidence is conflicting, the verdict of the jury will not be set aside unless it is clearly wrong. Kennedy v. Department of Roads & Irrigation, 150 Neb. 727, 35 N.W.2d 781.
Stated otherwise that rule would be: When evidence is conflicting, the verdict *92 of a jury, or the finding of fact by a court in a law action for damages where a jury is waived, will be set aside where manifestly excessive and clearly wrong.
As we view it, the judgment in this case is manifestly excessive and clearly wrong. We find no basis upon which it can be sustained properly.
The judgment of the trial court is reversed and the cause remanded for a new trial.
Reversed and remanded for a new trial.
WENKE, J., not participating.