Howard T. Hogan, J.
In this proceeding in eminent domain the Incorporated Village of Hewlett Bay Park has vested title to a parcel of land containing 40,390 square feet.
When the petition to condemn was presented, this court denied the application on the grounds that the village was perverting the condemnation process, and utilizing its powers solely to proscribe a use for the property which it deemed distasteful, to wit, as a parking area for conjunctive use with a shopping center. That determination was reversed by the Appellate Division and the Court of Appeals declined to hear further appeal at that time on the grounds that the order of vesting pursuant to the order of the Appellate Division was not a final order. (48 Mise 2d 833, revd. 27 A D 2d 578, mot. for lv. to app. den. 19 N T 2d 747.) A trial has now been had on the issue of compensation.
The petitioner’s real estate expert valued the property as ‘ ‘ vacant residential property ’ ’ and ascribed a value of $17,500 for the parcel.
Originally the claimant had retained the late Frank Wittman as its expert. The expert who testified on behalf of the claimant stated at the outset that he had an interest in the award to the extent of one quarter of one eighth percent. Claimant’s expert valued the parcel in light of probable relief from the zoning ordinance, and in addition to the direct damages sustained by virtue of the taking of the subject parcel, he ascribed consequential damage to the contiguous shopping center owned by the owner herein. He approached the problem as in a partial taking, and found a land value before of $697,579.15 for the entire parcel and a remainder of $518,056.65. Of his damage of $179,522.50 his direct damage was $100,997.50 based upon 40,390 square feet at $2.50 and his consequential damage was $75,000 based upon the loss of 100 accessory parking places by the shopping center at $750 per place.
The Village of Hewlett Bay Park has but one type of building zone, residential. The community as a whole is one of large parcels of land improved for the most part with impressive and desirable homes. Névertheless, there are some nonresidential uses within the confines of the village. These include a private *1087 school, a parking lot for Hewlett High School, a park and duck pond as well as an area used for village storage. In addition, the village has attracted many physicians who utilize portions of their homes for their practices.
Adjacent to the subject property on the northeasterly side is a parcel of land which is located within the village, but which is contiguous with a parcel located within the unincorporated area of the Town of Hempstead. Garden apartments have been constructed in the unincorporated area and, while there is no structure erected upon the land within the village, it is utilized by the apartment tenants as their rear yards and play area. Moreover, the area within the village was included by the town in calculating the density permitted by the town for the garden apartments.
Immediately outside the incorporated village the keynote is business. Contiguous with the damage parcel on the northwest is the shopping center owned by the claimant. Across from the westerly corner of the land taken is business. Adjacent to the northerly corner is the apartment complex. Within 200 feet of the taken parcel is Broadway in Hewlett, an extremely busy street with business on both sides and which services one of the best known shopping districts in the affluent area known as the “ Five Towns
As demonstrative as the exhibits and the testimony of the witnesses are, an actual view of the property underscores the accuracy of the testimony of claimant’s witness Tobler, an expert in the field of zoning. There is no question but that sound zoning practice would permit the use of the subject property as a parking lot in conjunction with the adjacent shopping center. It would create a buffer between the highly commercialized area and the residentially zoned village.
By the same token, the parcel is slightly smaller than the minimum parcel for residential development within the village which is. now one acre minimum. In the immediate vicinity of the subject parcel are two homes located on large parcels of land with the buildings set back substantially from the subject parcel and visually isolated from the damage parcel by hedges, trees and shrubs. One of these, owned by Dr. Amer, is contiguous with business zoned property in the township on one side. The other, formerly owned by Florence B. Carter, is adjacent to the subject parcel. Mrs. Carter once owned, in addition to her home, the area now improved with the shopping center and the damage parcel. The deed from Mrs. Carter to claimant’s predecessor in title contains limitations in the use not only of the subject property, but also of the land now improved with the shopping *1088 center. However, the use of the damage parcel as a parking field, subject to the zoning authorities’ consent, is provided for and consented to by Mrs. Carter in the deed to claimant’s predecessor. Neither of these homes would be adversely affected by permissive parking on the subject parcel, and the owner of the Carter home is bound by the consent of his predecessor.
Equally important is the fact that it would be extremely difficult, if not impossible, to find a purchaser for the subject property who would erect upon it a single-family residence. Not only is the subject parcel the property adjacent to the shopping center, but it is also substandard under the present zoning ordinance, and its relatively small size precludes the erection of an appropriate home on the parcel which could be properly screened from the commercial use. It is simply too small to enable the owner to get away from the business and to erect a suitable home.
The village zoning ordinance gives the Board of Trustees the power to grant special exceptions to permit any use accessory to property outside the village (art. IV, § 15 [2e]). Petitioner argues that no special exception could be granted since the ordinance does not specify parking as such use, and cites Matter of Simensky v. Mangravite (16 A D 2d 977, affd. 12 N Y 2d 908).
That case holds that “ special exception procedure applies only to uses or improvements expressly permitted by the zoning ordinance, but with such permission subject to approval by an official body ”. In the facts of that case a petitioner sought to utilize special exception procedures to vary the height of a proposed structure and the number of stories. Also involved was the number and size of parking places required.
The court distinguished that type of application from a “ use ” restriction such as is in the ordinance at bar. Here claimant would seek to vary the zoning requirements in accordance with the terms of that ordinance, namely, to enable the use of property within the village as use accessory to property outside the village.
While it is unlikely that the village would permit the parking usage, since it has fought to keep the village residential, the court concludes that there is every reasonable probability that relief would be granted by the court to enable the use of the subject property for accessory parking. The fact that the village as the condemnor takes the position that it would not permit relief is an irrelevant factor (Albany Country Club v. State of New York, 19 A D 2d 199 [3d Dept., 1963], affd. 13 N Y 2d 1085 *1089 [1963]; Mastroieni v. State of New York, 25 A D 2d 463 [3d Dept., 1966]). Indeed, an argument by the village that it would not grant relief under any circumstances could place it in the position of deliberately depressing the value of the parcel. This, of course, it could not do. (Matter of City of New York v. Fifth Ave. Coach Lines, 18 N Y 2d 212 [1966].)
The probability of relief from the zoning ordinance will be taken into account in valuing the parcels, and the property must be valued not as if rezoned, but in light of the probability of relief (Lasko v. State of New York, 14 A D 2d 637; Valley Stream Lawns v. State of New York, 9 A D 2d 149; Mastroieni v. State of New York, supra, p. 464 ; 4 Nichols, Eminent Domain [3d ed.], § 12.322).
Insofar as the valuation is concerned, the court is constrained to disregard the appraisal of the petitioner. Not only was the estimate of value limited strictly to residential sales, but the appraiser erred when he chose to average his comparable sales (Latham Holding Co. v. State of New York, 16 N Y 2d 41; Matter of Incorporated Village of Lynbrook, N. Y. L. J., Nov. 13, 1967, p. 26, col. 5; Matter of Nassau County [McNiel Ave.], 246 App. Div. 757; 5 Nichols, Eminent Domain, § 21.3, subd. [1], p. 429).
Claimant’s appraiser proffered a value of $5 per square foot if zoned for parking and depreciated that 50% for the cost of obtaining the permit, contemplating denial by the. board and ultimate success in the courts and for the cost of landscaping and screening. While he did not testify in so many words as to what definitive portion of this 50% deduction was for the lack of probability, or risk, attendant to the application, such deduction may be inferred from the size of the deduction. Moreover, his sales are all of prime business locations having frontage on Broadway. He utilized these values because he approached the problem as one of a partial taking. He valued the entire shopping center, including the damage parcel. He then estimated the damage sustained to the entire parcel and deducted it from the original value to arrive at an after value. This approach is not entirely sound, as the expert is supposed to calculate the after value as in a separate appraisal and find the mathematical difference as the damage.
Claimant also seeks what he terms are consequential damages based upon the loss of 750 parking places. This is more properly termed severance damage, as consequential damage relates to injury sustained by reason of the use to which the condemned property is put (Emigrant Mission Committee v. Brooklyn El. *1090 R. R. Co., 165 N. Y. 604; Syracuse Grade Crossing Comm. v. Wellin Oil Co., 268 App. Div. 627, affd. 295 N. Y. 738).
In the ease at bar, claimant contends that the loss of a parking field has damaged him $75,000 in addition to the direct damage, the value of the parcel taken. The court does not agree. He has not lost a parking lot, he has lost a prospective parking lot, and the land taken has been valued in light of the probability of the permissive use of this field for parking.
While the court is aware of no New York cases in point, other jurisdictions have refused to find additional damages, based upon sound widely accepted principles.
To ascribe an increment in value for a probable particular use and then add another increment for the extinguishment of that use is in this court’s opinion to award double damages for one taking. See County of Oneida v. Blake (262 App. Div. 941) wherein the court set aside an award based upon the value of the part appropriated plus the difference in value before and after the taking.
A separate award should not be given for the value of the land taken, considering the entire tract, and another sum for damages to the remaining land. The result is the payment of double damages and is universally proscribed (Yolo Water & Power Co. v. Hudson, 182 Cal. 48; Peoria, Bloomington & Champaign Traction Co. v. Vance, 234 Ill. 36; Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442).
Pertinent on this point is Commonwealth v. Blanton (352 S. W. 2d 545, 547-548 [Ky., 1962]) which was concerned with a parking lot accessory to an apartment house, the court said that:
‘ ‘ It is true that when a portion of a tract of land is taken in condemnation the value of the portion taken is to be measured with reference to the entire tract, West Virginia, P. & T. R. Co. v. Gibson, 94 Ky. 234, 21 S. W. 1055, or, stated another way, considering its relation to the entire tract. Tennessee Gas Transmission Co. v. Huddleston, 312 Ky. 833, 229 S. W. 2d 983. Therefore, the fact that the land taken here was used as a parking lot for the apartment house could in ordinary circumstances be considered in determining its value, and it is plain that the witnesses for the landowner did give primary consideration to such use.
‘ ‘ It also is true that the landowner is entitled to damages to the remainder of his tract in addition to the value of the land actually taken. KRS 177.083.
‘ ‘ It must be obvious, however, that if in valuing the land taken its use as a specific facility is considered, and the damages for the taking are thus computed on the basis that the owner is *1091 being deprived of that facility, the loss of the facility taken cannot be again considered as part of the damages to the remainder of the tract. It seems to us that the situation here is no different from that in Smick v. Commonwealth, Ky., 268 S. W. 2d 424, where the landowner’s garage was taken and paid for, and he sought to recover in addition the expense of building a new garage. • * * *
' ‘ In the instant case, in estimating around $9,000 as the value of the land taken from the appellee, his witnesses expressly stated that they were basing their estimates on the use of the land for a parking lot, and in doing so they necessarily were allowing damages on the basis of the reduced value of the apartment building that would result from not having a parking lot. So when they estimated the damages to the remainder of the property on the basis of the necessity to have a new parking lot they were duplicating the same items of damages. See Smick v. Commonwealth, Ky., 268 S. W. 2d 424; Greenup County v. Redmond, Ky., 335 S. W. 2d 335; Commonwealth Department of Highways v. Rankin, Ky., 346 S. W. 2d 714. ’ ’
Accordingly, the court finds that neither severance nor compensable consequential damages have been sustained as a result of this taking.
The court cannot in good conscience accept claimant’s estimate of value, as it is based upon sales of prime commercial property fronting on Broadway and as it reflects a value of $5 per square foot. This land utilized as a rear parking lot cannot be worth the same value as the prime commercial land utilized for the shopping center. In the court’s opinion, based upon the present state of the record, the subject parcel would under no circumstances be worth more than $2.50 per square foot. Deducting claimant’s 50% factor, the indicated value of the subject parcel on the date of vesting for use as a potential parking site is $1.25 per square foot or $50,487.50 for 40,390 square feet taken.
Due to the rejection by the court of the petitioner’s appraisal in toto and of so much of claimant’s appraisal as relates to a partial taking approach, the parties will be permitted to submit at the hearing on objections such proof of value as they may deem fit on the question of square-foot value for a potential parking area. Such proof may include comparable sales, but any such sales and other material shall be exchanged 10 days prior to the hearing. The court will then review its finding of $1.25 per square foot and revise it as may be necessary in light of competent proof.
*1092 The claimant demonstrated that there were installed upon the subject property $3,525 worth of lighting fixtures and other equipment. The testimony also indicates that these items were installed by the village. No award, therefore, will be made for any such items unless claimant proves at the hearing on objections which items were owned by it.
Based upon the testimony, the exhibits, the appraisals and the court having viewed the premises, the court finds and awards:
DAMAGE PARCEL 1
40,390 square feet at $1.25...........$50,487.50
rounded to $50,500.00