FRANK J. WEAR ET AL., APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

337 N.W.2d 708

Filed August 5, 1983. No. 81-927.

Paul L. Douglas, Attorney General, Warren D. Lichty, Jr., and Gary R. Welch, for appellant.

J. Thomas Rowen of Miller & Rowen, P.C., for appellees.

Krivosha, C.J., Boslaugh, McCown, White, Hastings, and Caporale, JJ., and Colwell, D.J., Retired.

McCown, J.

This is a condemnation proceeding instituted by the Nebraska Department of Roads to acquire the

land necessary for highway reconstruction in Sarpy County, Nebraska. The jury verdict was for $677,480 and the State has appealed.

The State sought to acquire 18.12 acres of land on the outskirts of Omaha located on the west side of Highway 50 near its intersection with Interstate 80 in Sarpy County, Nebraska. The land taken in fee title was a roughly rectangular tract approximately 1,535 feet north and south by 535 feet east and west, and was located in the southeast corner of a 75-acre tract of land owned by the individual condemnees, who are plaintiffs in this action.

The 75-acre tract was also rectangular, approximately 2,600 feet north and south by 1,250 feet east and west. The State had acquired control of access from the 75-acre tract to Highway 50 in 1962, and had restricted access use to two field entrances to be used for normal farming operations. No other access existed to Highway 50. Twenty-six acres of the 75-acre tract were zoned as general business and the remaining acres were zoned for multifamily dwellings. Of the 18.12 acres actually taken by the State, 13.8 acres were zoned general business and 4.32 acres were zoned for multifamily dwellings.

Prior to the filing of the condemnation action here the plaintiff landowners had prepared and drawn plans for the development of the 75-acre tract for use as a shopping center and condominium apartment complex.

In June 1980 the Nebraska Department of Roads filed a condemnation proceeding in Sarpy County, and on July 10, 1980, the board of appraisers in the county court awarded the property owners $480,942 as damages by reason of the taking. Both the property owners and the State appealed the award to the District Court, and the property owners were designated plaintiffs.

At the trial in District Court the plaintiffs presented Fred Krambeck, a licensed real estate appraiser, as their first witness. Krambeck testified

and gave his opinion as to the amount of damages sustained by the plaintiffs, including the value of the 18.12 acres actually taken and the damages to the remainder of the 75-acre tract. Krambeck testified that his opinion was based upon computations, figures, and plans prepared by Bill Dorner, a registered land surveyor.

Dorner testified that he prepared some of the figures and computations for the plaintiffs' planned development of the 75-acre tract. Dorner admitted that when he prepared the plats he presupposed access to Highway 50. On motion of the State the District Court then struck the testimony of Dorner on the basis that he was not a registered civil engineer and therefore not qualified to prepare the figures and plats offered in his testimony. The court also struck the testimony of Krambeck because his valuations were based on the Dorner figures and the assumption that there was access to Highway 50.

Later in the trial plaintiffs produced the testimony of Robert E. Dreesen, a certified civil engineer who was a partner with Dorner in a 30-person engineering and surveying firm. Dreesen testified that all figures and materials prepared by members of his firm were prepared under the supervision of a licensed engineer and were reviewed and checked for authenticity and accuracy. He testified that he personally reviewed the exhibits and figures prepared by Dorner and that in his opinion the figures and computations were true and accurate. Dreesen also testified that the absence of access to Highway 50 would not affect the feasibility of the Dorner plans, nor the figures reviewed and testified to by Dreesen, even though Dorner had incorrectly presumed access when the plans were prepared.

Paul Merker, a licensed real estate appraiser, also testified on behalf of the plaintiffs. He testified that the commercial and residential zoning of the 75-acre tract represented the highest and best use of the property. He used a market data approach for his

valuations and selected a series of sales of similar properties in the area which he adjusted for differences between them and the subject tract.

In Merker's opinion the fair market value of the entire tract before the taking was $1,044,569, the fair market value of the remainder after the taking was $184,426, and the total damages were $860,143.

Merker testified that the value of the 18.12 acres actually taken was $336,316 and the balance was for damage to the remainder of the tract.

Robert E. Wear, a real estate developer and one of the owners of the land, testified that the development plan for the 75-acre tract had been drawn up prior to the condemnation and that, in his opinion, the plaintiffs sustained approximately $1 million in damages as a result of the taking.

The State's evidence outlined its plan to expand the intersection of Highway 50 and Interstate 80, and also established that the only access from plaintiffs' land to Highway 50 was two field entrances restricted to use for farming purposes.

Attilio Rindone, a licensed real estate appraiser, testified on behalf of the State. In his opinion, using a market data approach and comparative sales, the value of the entire property before the taking was $380,000, the value of the remainder after the taking was $279,000, and the total damages were $101,000.

The jury viewed the premises at ground level and by air, and returned a verdict for the plaintiffs in the sum of $677,480.

At a separate hearing thereafter the District Court granted the plaintiffs attorney fees of $80,000, plus expert witness fees of $1,680, and this appeal followed.

The basic contention of the State on appeal is that the testimony of the expert real estate witness Merker was improper and should have been excluded because his valuations were partially based upon computations prepared by William Dorner, whose testimony had been stricken upon the ground

that he was not a licensed civil engineer. Dorner had also testified that his computations assumed access to Highway 50. The State also contends that Merker's testimony should have been excluded because the evidence did not establish that the comparative sales used by Merker were arm's length transactions between willing buyers and sellers.

The State's position is that because of the admission of the evidence, which the State asserts was improper, the verdict was excessive. Essentially, the State's position is that because Dorner presumed access to Highway 50 when he prepared his computations, a real estate expert witness, such as Merker, who used Dorner's computations and plans, also necessarily assumed there was access to Highway 50 as a basis for all valuation testimony. Therefore, the State argues, Merker's testimony as to the valuation of the land taken or damaged must be excluded. The record does not support the State's position.

Without passing upon the issue of whether Dorner's testimony was properly stricken as incompetent, the testimony of Robert Dreesen, a licensed civil engineer, is in the record to reestablish Dorner's facts and figures and to support Merker's testimony as to damages. Dreesen testified that he had personally reviewed Dorner's figures and plans and that they were accurate, in his opinion. Dreesen specifically testified that his opinion would not be different without access to Highway 50, and that access to Highway 50 would not affect any of Dorner's facts or figures which Dreesen had testified about.

The jury was specifically instructed that the State had previously purchased control of access from the subject property to Highway 50 and was the owner of such rights, and that the only access the plaintiffs had to Highway 50 was by way of two field entrances to be used for movement of farming equipment only. There is no evidence in the record that the jury mistakenly or incorrectly assumed otherwise.

The State also contends that Merker's testimony as to damages was improper because the comparative sales he used were not arm's length transactions between willing buyers and willing sellers. Merker testified that in arriving at a fair market value of the property involved here, he examined 28 comparable sales, noting the date of sale, the number of acres involved, the total consideration, the consideration per acre, the area and the square feet, the consideration per square foot, and the zoning. Out of the 28 sales, Merker selected 4 sales of commercial property and 4 sales of residential property and adjusted those sales for location, size, shape, grading, and zoning so that they could be compared with the property involved here. He testified that he examined the deeds for all the comparable sales and verified the consideration for the sale with at least one of the participants in the transaction.

One of the eight sales was shown to be part of a condemnation action instituted by the State and it was stricken by the District Court because it was not an arm's length transaction. The State's motion to strike the remaining sales on the ground that they were not arm's length transactions was overruled by the court. Counsel for the State stated that testimony would be presented later showing that the sales were not arm's length transactions, but no such evidence was ever presented.

Generally, evidence as to the sale of comparable property is admissible as evidence of market value, provided there is adequate foundation to show the evidence is material and relevant. The foundation evidence should show the time of the sale, the similarity or dissimilarity of market conditions, the circumstances surrounding the sale, and other relevant factors affecting the market conditions at the time. *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979).

Whether properties, the subject of other sales, are sufficiently similar to the property condemned to

have some bearing on the value under consideration, and to be of aid to the jury, must necessarily rest largely in the sound discretion of the trial court. The trial court's determination will not be interfered with in the absence of an abuse of discretion. The exact limits, either of similarity or difference, or of nearness or remoteness in point of time, depend upon the location and character of the properties and the circumstances of the case. *Langfeld v. Department of Roads*, 213 Neb. 15, 328 N.W.2d 452 (1982).

In the absence of some evidence that the sales were not arm's length transactions, the District Court was correct in refusing to strike the testimony and there was no abuse of discretion.

The weight and credibility of valuation testimony in a condemnation action are for the jury, and in testing such evidence the condemnee is entitled to have all conflicts resolved in a light most favorable to him. *Dawson v. City of Lincoln*, 176 Neb. 311, 125 N.W.2d 908 (1964).

In the case at bar the evidence of the plaintiffs as to the damages suffered by reason of the condemnation range from $860,000 to $1 million. The testimony of the State's expert witness placed the damages at $101,000. The jury saw and heard the witnesses and viewed the premises from the ground and from the air and brought in a verdict for $677,480. The verdict was within the range of the testimony and there is no objection to the instructions.

The amount of damages sustained in a condemnation action is peculiarly a question of a local nature and ordinarily is to be determined by a jury. Where the evidence is conflicting, this court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong. *Danish Vennerforning & Old Peoples Home v. State*, 205 Neb. 839, 290 N.W.2d 791 (1980). The verdict of the jury in the case at bar was not clearly wrong. One of the items of damages

considered by the jury was the cost of purchasing dirt for the grading of the remainder of the land. Wear had apparently planned to use the dirt from that portion of the land taken. While we have doubts as to the correctness of considering this item, the State did not object to such testimony and has not assigned this matter as error. Therefore, we shall not consider it on appeal.

The State also appeals from the award of attorney fees of $80,000 to the plaintiffs pursuant to Neb. Rev. Stat. § 76-720 (Reissue 1981). The State contends the fees are excessive.

The evidence at the hearing on fees established that the plaintiffs had a contingent fee arrangement with their attorney to pay 25 percent of the difference between the highest offer by the State and the final jury verdict. Under that arrangement the contingent fee would have been $119,370. One of the plaintiffs, who was also an attorney, testified that in his opinion, and taking all the factors of the case into account, $90,000 would be a reasonable attorney fee. Plaintiffs' counsel testified as to his duties in connection with the case. A local attorney, acquainted with the work and reputation of plaintiffs' counsel, testified that, taking into account the degree of difficulty and the amounts involved, a sum between $100,000 and $133,000 would be a reasonable attorney fee. The District Court allowed a fee of $80,000.

The State contends that the fee is excessive because the trial court considered the contingent fee arrangement and because the plaintiffs' attorney did not produce a complete record of the amount of time spent in the preparation and trial of the case. In the determination of a reasonable attorney fee, the court should consider the importance of and the result of the case, the difficulties thereof, the degree of professional skill demonstrated, the diligence and ability required and exercised, the experience and professional training of the attorney, the difficulty of the questions of fact and law that are raised, and the

time and labor necessarily required in the performance of those duties.

The court, in awarding a reasonable attorney fee, may consider the actual agreement existing between a litigant and his attorney, including an obligation to pay a contingent fee. While the actual agreement is neither the sole factor nor a factor to be given any greater weight than any of the other factors, it may nevertheless be considered. *Prucka v. Papio Nat. Resources Dist.*, 206 Neb. 234, 292 N.W.2d 293 (1980).

The allowance of a reasonable attorney fee for necessary services performed by an attorney in a condemnation case under the provisions of § 76-720 will not be reversed on appeal to this court in the absence of an abuse of discretion. There was no abuse of discretion here.

The judgment of the District Court and the award of attorney fees and costs are affirmed.

AFFIRMED.

BOSLAUGH, J., dissenting.

A verdict in a condemnation case which is manifestly excessive, clearly wrong, and not supported by the evidence can not be sustained. *Moyer v. Nebraska E. G. & T. Coop.*, 171 Neb. 879, 108 N.W.2d 89 (1961).

The judgment in this case appears to be excessive on its face. The taking amounted to about 25 percent of the area of the tract, but the damages awarded amount to approximately 68 percent of the value of the entire tract, according to the plaintiffs' evidence. The plaintiffs' expert witness, Merker, valued the remainder after the taking at less than 20 percent of the value of the entire tract before the taking. In other words, the remaining 75 percent of the property was worth less than 20 percent of the value of the entire tract.

It further appears that the judgment is excessive because the owners were allowed to recover damages twice for the property taken. They were allowed to recover the value of the land taken plus

the replacement cost of fill dirt that could have been removed from the land taken. The landowners should not be paid for both the value of the dirt and its replacement cost.

When only a part of a tract is condemned, the measure of damages in Nebraska is the value of the property taken plus the difference in the value of the remainder before and after the taking. See *Connor v. State*, 175 Neb. 140, 120 N.W.2d 916 (1963). This rule has been criticized because it may permit a double recovery. See, 1 Orgel, Valuation under Law of Eminent Domain § 64 (2d ed. 1953); *Commonwealth v. Blanton*, 352 S.W.2d 545 (Ky. 1961).

In *Blanton, supra* at 547, the court said: "It must be obvious, however, that if in valuing the land *taken* its use as a specific facility is considered, and the damages for the *taking* are thus computed on the basis that the owner is being deprived of that facility, the loss of the facility taken cannot be again considered as part of the damages to the remainder of the tract. It seems to us that the situation here is no different from that in Smick v. Commonwealth, Ky., 268 S.W.2d 424, where the landowner's garage was taken and paid for, and he sought to recover in addition the expense of building a new garage." (Emphasis in original.) See, also, *P., B. & C. Traction Co. v. Vance*, 234 Ill. 36, 84 N.E. 607 (1908); *State, Dept. of Highways v. Country Club Acres*, 348 So. 2d 138 (La. App. 1977). See, also, cases cited at 4A Nichols, Law of Eminent Domain § 14.06 n.10 and § 14.08 n.24 (3d ed. 1981).

In the present case the landowners were entitled to recover the fair market value of the 18.12 acres of the land taken plus severance damages to the remainder. The evidence of the landowners relating to value can be summarized as follows:

Wear, one of the landowners, testified that the value of the property was reduced $1 million.

Merker, the expert witness, testified to the following values:

| | |
|---|---|
| Value of entire 75-acre tract | $1,044,569 |
| Value of 18.12 acres taken | 336,316 |
| Value of remainder before taking | 708,253 |
| Value of remainder after taking | 184,426. |

Merker testified that the value of the remainder after the taking was diminished because the 18.12 acres taken contained fill necessary to develop the remaining property for commercial and residential use, and that the loss in market value was equal to the cost of obtaining replacement fill.

Merker relied upon estimates compiled by the engineer, Dreesen. Dreesen testified that to develop the remainder, 602,000 cubic yards of fill and 79,865 cubic yards of topsoil would be required; that 392,000 cubic yards of fill and 59,600 cubic yards of topsoil were on the remaining property; and therefore the landowners would be required to purchase and transport 210,000 cubic yards of fill and approximately 20,000 cubic yards of topsoil at a cost of $504,000. Dreesen calculated the onsite grading costs before the taking and subtracted these from the cost of the project when it required fill to be brought in from offsite. It was stipulated that the land taken contained 266,000 cubic yards of fill.

If it is assumed that the grading project was necessary for the development of the remainder, that the development plan was feasible, and that the damage to the remainder was equal to the cost of replacing the fill present on the 18.12 acres, the award made by the jury is still excessive. This is because the landowners were permitted to recover the fair market value of the 18.12 acres which included the value of the fill dirt, and also to recover the cost of procuring replacement fill dirt as a part of the diminution in value of the remainder. Thus, the award resulted in double compensation.

In the present case the value of the land taken included the value of the dirt in place. The landowners can not also recover the cost of replacing the dirt. An analogy can be made to trespass cases in-

volving the removal of dirt. A landowner may recover the diminution in market value of the land *or* the market value of the soil taken but may not recover both. See *City of Atlanta v. Swiney*, 20 Ga. App. 415, 93 S.E. 24 (1917) (syllabus of the court).

If the landowners were entitled to any severance damage for the loss of the dirt on the 18.12 acres, the measure would be the costs necessitated by the transportation of substitute dirt to the site.

HASTINGS, J., joins in this dissent.