CITY OF SIOUX FALLS, Plaintiff and Appellant,

v.

Donald D. KELLEY and Daryl W. Kelley, Defendants and Appellees.

Nos. 17871, 17872.

Supreme Court of South Dakota.

Argued Nov. 16, 1992.

Reassigned Aug. 12, 1993.

Decided Feb. 23, 1994.

Rehearing Denied March 31, 1994.

Janet F. Brekke and Thomas Anderst, Asst. City Attys., Sioux Falls, for plaintiff and appellant.

Mark V. Meierhenry and Sabrina Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, for defendants and appellees.

AMUNDSON, Justice (on reassignment).

The City of Sioux Falls (City) appeals from a jury verdict in a condemnation suit. Donald D. and Daryl W. Kelley (Kelleys) appeal on the issue of prejudgment interest. We affirm in part, reverse in part and remand.

## FACTS AND PROCEDURAL HISTORY

Kelleys owned a construction business in Sioux Falls, South Dakota, from the mid–1940s through the early 1970s. In the late 1960s, the brothers acquired a twenty-seven-acre tract of land located to the north side of 41st Street and to the east side of what is now known as Louise Avenue in Sioux Falls. The land was originally purchased as a fill site to deposit excess dirt from construction projects and for development speculation. By 1973, approximately twelve acres had been sold and the remainder was platted into eight lots as part of Kelleys' subdivision.

Prior to 1984, all of Lot 3 and the south half of Lots 4, 5, 6, and 7, which abut 41st Street, were sold to various commercial businesses. The remainder, consisting of approximately five and one-half acres with some frontage on Louise Avenue, was marketed as one tract through Kelleys' real estate agent.

Due to development in southwestern Sioux Falls the City commissioned an engineering firm to do a drainage study of an area which included Kelleys' subdivision. In May 1990, the engineer submitted a final report to City which identified a portion of Kelleys' subdivision property as being ideal for a storm water detention pond.

After Kelleys became aware of the study, they commenced negotiations with City for purchase of property needed for a detention pond. Kelleys proposed that City purchase all of their remaining property. City declined because the whole tract was not required for construction of the detention pond.

Kelleys hired an appraiser who prepared an appraisal on May 17, 1990. Shortly after that appraisal, Kelleys sold an additional one-hundred feet of Lots 4, 5, & 6 to adjacent owners, leaving only the property to be taken by City and the west three hundred thirty-five feet of Lot 2, which fronted Louise Avenue. Kelleys' appraiser then revised his appraisal to include only the property retained by Kelleys after the sale. In June 1990, City also had an appraisal of the property prepared.

During August 1990, City discovered the subject property might be considered wetlands by the federal government. If so designated the property's suitability for development would be questionable. Based on this new information, City's appraiser prepared a revised appraisal. Because of a wide disparity in land values between the Kelleys' and City's appraisals, City hired a second appraiser to prepare an appraisal of the property in September 1990.

Kelleys negotiated the sale of the west three hundred thirty-five feet of Lot 2 to a Kentucky Fried Chicken (KFC) franchisee on or about October 1, 1990. After the sale, the only land Kelleys had left was the property to be taken for the detention pond, which was isolated and had no street access.[1]

---

1. In their brief, Kelleys state for the first time that they still own a small parcel, but did not offer that evidence at trial "to avoid confusing the jury." We disregard the statement made in

Because City and Kelleys failed to reach an agreement for the purchase of the property, Kelleys commenced an action for trespass and inverse condemnation against City in January 1991. The complaint alleged that City had deprived Kelleys of substantially all of the use and enjoyment of their property since July 1988. On February 4, 1991, City adopted a resolution authorizing the condemnation of Kelleys' property, and a condemnation action was filed on June 3, 1991.

Kelleys then moved to consolidate their inverse condemnation and trespass claims with City's condemnation action. City resisted and moved for summary judgment on Kelleys' claims. On October 17, 1991, the court denied Kelleys' motion to consolidate, granted summary judgment on the inverse condemnation claim, and deferred ruling on the trespass claim until after trial on the condemnation action.

Before the trial started, City's attorney moved to exclude any evidence pertaining to severance damages because Kelleys had sold all of their remaining property, before the established date of taking. Therefore there was no partial taking and thus no severance damages. Kelleys resisted this motion and stated that they would be presenting no severance damage evidence. The trial judge deferred ruling on City's motion until the evidence was offered, and instructed counsel to have witnesses refrain from using the term "severance damages" in their testimony.

At trial, Kelleys' appraiser gave his opinion of just compensation. He valued the whole Kelley tract as it existed on July 5, 1990 (before the KFC sale) and subtracted the KFC sale from the value of the whole tract to arrive at his opinion of just compensation which was $468,000.

City moved to strike the appraiser's testimony because the opinion was based on a partial taking and included severance damages. The trial court overruled the motion, stating that, although the witness "nibbled around the edges" of severance damages, his opinion was given only as to the value of the land taken.

Kelleys also had Don Kelley give his opinion of the land's value. He valued the property taken by City at $764,000, as it existed on February 4, 1991, the date of City's resolution of condemnation.

City called two appraisers to testify. One of the appraisers testified that he initially appraised only the property to be taken in June 1990. In his opinion, just compensation at that time would be $219,300. He further testified that he reappraised the property in May 1991 at the request of City, assuming that the subject property contained protected wetlands. Based on that assumption, he concluded just compensation would be $50,800.

City's other appraiser testified that his appraisal was performed as of October 29, 1990, when Kelleys had not yet sold the KFC property. He valued the whole tract, assuming the existence of protected wetlands on the property, then subtracted the KFC sale from the whole tract's value and arrived at his opinion of just compensation due in the amount of $139,000.

The trial court instructed the jury that the time of the taking was February 4, 1991, the date of City's resolution of condemnation; that the only issue to be determined by them was the amount of just compensation to be paid to Kelleys; and in this case, just compensation was the fair market value of the condemned property at the time of the taking.

The jury awarded $450,000 as just compensation. City now appeals.

Other facts will be referred to as they relate to the issues discussed herein.

### ISSUES

1. Did the trial court err in allowing Kelleys to introduce evidence of inverse condemnation into City's condemnation trial?

2. Did the trial court err in allowing Kelleys to introduce evidence of a partial taking, resulting in the injection of a severance damage issue into the condemnation proceeding?

the brief because it is not part of the record made during the proceedings.

3. Did the trial court err by restricting objections to depositions read at trial to only those objections made at the time the depositions were taken?

4. Whether the trial court erred in refusing to strike the testimony of Kelleys' appraiser regarding the remainder value of severed property.

5. Did the trial court err when it refused to strike the testimony of Kelleys' appraiser regarding purchase agreements used as comparable sales in valuing the property being taken?

6. Was it error for the trial court to allow counsel for Kelleys to use hypothetical questions when cross-examining City's appraiser?

7. Did the trial court err in allowing counsel for Kelleys to question potential jurors during voir dire about their relationship to property owners in a drainage district that did not exist?

8. Whether the trial court erred in restricting City's cross-examination of a witness called by Kelleys.

9. Did the trial court abuse its discretion in restricting the testimony of City's expert on wetlands?

10. Whether the trial court erred in allowing a jury view of the property during jury deliberations.

11. Whether the trial court erred in failing to instruct the jury (a) as to the burden of proof on claims that the property was adaptable to another use, (b) on the presumption of property's current use as its highest and best use, and (c) on speculation and conjecture.

12. Whether the trial court erred in allowing counsel to argue matters of law during closing arguments.

13. Did the trial court properly assess the taxation of costs against City?

14. Did the trial court use the correct method in assessing reasonable attorney fees as costs?

## ISSUE ON CROSS-APPEAL

Should the trial court have allowed an allowance for prejudgment interest?

## DISCUSSION

### ISSUES 1, 2 & 4

Since issues 1, 2 and 4 deal with similar evidentiary rulings we will address these issues at the same time.

■ The only issue before the jury in a condemnation action is the amount of compensation to be paid for the property taken or damaged. SDCL 21–35–15. City's claims of error in Issues 1, 2 & 4 are connected with both parties' valuation testimony. The theme of City's argument is that evidence dealing with property values prior to the time of taking (February 4, 1991) should not be admitted. However, neither party presented an expert opinion on the fair market value as of the date of taking. The fair market value of property is to be determined at the time of the taking. *Basin Elec. Power Co-op., Inc. v. Cutler,* 254 N.W.2d 143 (S.D. 1977). Kelleys were the only party who submitted an appraisal of the land as of the date of taking. Donald Kelley valued the land as it existed on February 4, 1991, at $746,000.

■ City has not raised this as an error which would constitute grounds for a reversal of the jury verdict. In fact, no objection was made on the record to exclude the opinions for the reason that the opinions fail to state the value on the date of taking. It has long been the rule in this jurisdiction that, in order to preserve an issue for appeal on admissibility of evidence, an objection or motion to strike has to appear in the record. *Horton v. Horton,* 503 N.W.2d 248 (S.D.1993) (citing SDCL 19–9–3(1); *State v. Rufener,* 392 N.W.2d 424, 427 (S.D.1986); *Bright v. Ecker,* 9 S.D. 192, 68 N.W. 326 (1896)). In view of the circumstances in this case, this defect in the evidence is not of such magnitude to warrant reversal even though the opinion testimony is not a model of clarity or precision.

■ The main thrust of City's position is that the damage award in this case contains an element of severance. The transcript of the motion hearing denotes a suspicion on the part of City that Kelleys were making a

claim for severance damages. This fear of severance was birthed in the instructions proposed by Kelleys prior to trial. The instruction given by the trial court did not advise the jury to consider diminution of value to Kelleys' remaining property as an element of damage. This court held in *State Highway Commission v. Hayes Estate*, 82 S.D. 27, 34, 140 N.W.2d 680, 684 (1966), as follows:

> The measure of damages in condemnation cases involving a *partial taking* is the difference between the fair market value of the unit before the taking and the fair market value of what remains after the taking. *City of Bristol v. Horter*, 73 S.D. 398, 43 N.W.2d 543; *State Highway Commission v. Fortune*, 77 S.D. 302, 91 N.W.2d 675. In the application of this rule severance damage to the remaining property is included in an award[.] (Emphasis supplied.)

This case involves the taking of the total property owned by Kelleys. The witnesses gave their opinions as to the value of the total unit and did not discuss any diminution of value of a remainder, since there was no remainder to suffer any severance damage.[2]

In fact, after hearing Kelleys' appraiser, the trial court held that his opinion was limited to the value of the land being condemned. Trial courts exercise discretion when deciding whether to admit opinion evidence in a condemnation case. This court has previously stated:

> Great latitude is allowed in the reception of evidence to prove the value of property in condemnation cases, and generally any relevant and material evidence, if competent under general rules of evidence, is admissible to prove market value. If the proffered evidence tends to aid the trier of fact in arriving at a conclusion on the issue of value and damage, it should be received.

*Basin Elec. Power Co-op. v. Poindexter*, 305 N.W.2d 46, 48 (S.D.1981). Once a witness is qualified, as was the case here, he/she is entitled to give a value opinion. *Basin Elec-tric Power Cooperative, Inc. v. Cutler*, 88 S.D. 214, 218, 217 N.W.2d 798, 800. This opinion does not have to be beyond reproach.

> It is not required that an expert witness stand at the head of his class to make his evidence admissible. His preliminary examination must show such knowledge of the subject as will enable him to speak with intelligence. The jury will determine the value of his opinion from the knowledge which he shows himself to possess.

*Gleckler v. Slavens*, 5 S.D. 364, 384, 59 N.W. 323, 329 (1894).

The trial court did not abuse its discretion in allowing the expert opinion to be weighed by the jury in this case. The record reflects that the jury also heard value evidence from the landowners. The general rule is that the owner of the land being taken is competent to express an opinion on the value of his property being condemned. 5 Nichols on Eminent Domain, § 23.03 (1993). In upholding a jury verdict in a condemnation decision, the Nebraska Supreme Court held:

> The general rule was recently stated in *Wear v. State of Nebraska*, 215 Neb. 69, 76, 337 N.W.2d 708, 714 (1983): 'The amount of damages sustained in a condemnation action is peculiarly a question of a local nature and ordinarily is to be determined by a jury. Where the evidence is conflicting, this court will not ordinarily interfere with the verdict of the jury unless it is clearly wrong.
>
> In the instant case the jury's verdict was within the range of the testimony and is supported by sufficient competent evidence.

*City of Hastings v. Peter Ellis Farms, Inc.*, 216 Neb. 550, 344 N.W.2d 640, 642 (1984).

Furthermore, City must establish that the evidence admitted was not only erroneous but prejudicial. *Zens v. Chicago, Milwaukee, St. Paul & Pac.*, 479 N.W.2d 155, 159 (S.D.1991). Prejudicial error is error " 'without which the jury would have proba-

---

2. No evidence of a partial taking was presented at trial, no instruction on severance damages was given, and all testimony referring to severance damages was prohibited by the trial court. The jury was instructed to determine just compensation for a total taking and was not instructed on any issue of damages to a remainder.

bly returned a different verdict.' " *Id.* (quoting *Shaull v. Hart,* 327 N.W.2d 50, 53 (S.D. 1982)). Admitting the expert opinions on value was not prejudicial error, it could assist the jury in determining just compensation. A review of this record does not warrant an assumption that the jury bought the experts' opinion hook, line, and sinker. The determination of value in a condemnation proceeding is not a matter of formula or artificial rules, but of sound judgment and discretion based upon a consideration of all the relevant facts. *Wishek Investment Co. v. MacIntosh County,* 77 N.D. 685, 45 N.W.2d 417 (1950). A relevant fact considered by the jury in this case was the landowner's opinion.

In this case, the opinions of the experts and landowners on value were conflicting; the opinions were subject to thorough cross-examination; and the jury was properly instructed and returned a verdict within the range of the testimony. This verdict was not clearly erroneous and should not be set aside. *State Highway Comm. v. Madsen,* 80 S.D. 120, 125, 119 N.W.2d 924, 927 (1963).

### ISSUE 3

Did the trial court err when it restricted objections to depositions read at trial to only those objections made at the time the depositions were taken?

City argues that the trial court erred in restricting objections to depositions read at trial to only those made at the time the depositions were taken. "The trial court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion." *Stormo v. Strong,* 469 N.W.2d 816, 820 (S.D.1991); *Zepp v. Hofmann,* 444 N.W.2d 28, 31 (S.D.1989). "An 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by and clearly against reason and evidence." *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984).

City claims the trial court limited its ability to object to the deposition testimony. However, the record indicates that City was given an opportunity to raise additional objections to the depositions before they were read to the jury. The trial court ruled on these objections and City has not appealed any of these rulings. City does not point to any specific instances in which the trial court abused its discretion or committed error.

The party alleging error on appeal must show such error affirmatively by the record and not only must the error be demonstrated but it must also be shown to be prejudicial error. *Shaffer v. Honeywell, Inc.,* 249 N.W.2d 251 (S.D.1976). "Prejudicial error" is error which in all probability must have produced some effect upon the final result of the trial. *State Highway Commission v. Beets,* 88 S.D. 536, 224 N.W.2d 567 (1974). Prejudicial error is that without which the jury would have probably returned a different verdict. *Shaull,* 327 N.W.2d 50. City has failed to demonstrate prejudicial error relating the deposition testimony.

### ISSUE 5

Did the trial court err when it refused to strike the testimony of Kelleys' appraiser regarding purchase agreements used as comparable sales in valuing the condemned property?

City claims that the trial court erred in refusing to strike the testimony of Kelleys' appraiser regarding certain comparables used in his appraisal. More specifically, City objects to the appraiser's use of two purchase contracts entered by Kelleys. Traditionally, offers for the sale of land have not been admissible as proof of value. Nickels on Eminent Domain, Sales and Offers, § 21.-4(3). "The value of an offer depends on too many considerations to allow it to be used as a test of the worth of property." *Horner v. Beasley,* 105 Md. 193, 65 A. 820, 822 (1907).

"This court has taken the position that the foundation for the receipt of this type of evidence rests largely within the discretion of the trial court and to warrant a reversal on either the admission or exclusion thereof a clear abuse of such discretion must be shown." *State Highway Commission v. Hayes Estate,* 82 S.D. 27, 41, 140 N.W.2d 680, 688 (1966) (citing *Nystrom v. State,* 80 S.D. 58, 119 N.W.2d 123 (1962)). Admission of comparable sales rests largely within the discretion of the trial court in a condemnation proceeding. *State By and Through*

*Dept., etc. v. Richey Motor,* 296 N.W.2d 505 (S.D.1980).

■■■ The modern trend in the law of evidence in eminent domain proceedings favors both a liberal rule of admissibility and the giving of broad discretionary control to the trial judge. A number of cases have held that a price fixed in an unconsummated contract of sale, entered into by the owner of the condemned property with a third person before the condemnation, is admissible as substantive evidence of the value of the property. *See, State Roads Commission v. Wyvill,* 244 Md. 163, 223 A.2d 146 (1966); *Wolff v. Commonwealth of Puerto Rico,* 341 F.2d 945 (1st Cir.1965); *United States v. Certain Parcels of Land Etc.,* 144 F.2d 626 (3d Cir.1944); *Virgin Islands Housing Authority v. 15.5521 U.S. Acres of Land,* 230 F.Supp. 845 (DVI 1964); *Brush Hill Development Inc. v. Commonwealth,* 338 Mass. 359, 155 N.E.2d 170 (1959). The rationale of these decisions is well expressed in *Certain Parcels of Land.*

It is true that the contract had not been consummated and that, as argued by the government, reception of such evidence makes it possible for a landowner, learning that condemnation of his property is likely, to enter into a collusive agreement of sale so as to manufacture evidence in support of an exorbitant claim. This danger is not to be minimized, particularly in view of the difficulty which might well be entailed in proving such collusion. Yet evidence of a bona fide sale, otherwise relevant, should not be excluded because of the possibility that some landowner might conspire with another to defraud the government by manufacturing collusive evidence. Such objections go to the weight of such evidence rather than to its admissibility, and the trial affords opportunity, both by cross-examination and comment to the jury, to bring such evidence to its proper perspective for the jury's consideration. The penalties of the criminal law also will afford a deterrent to such persons without depriving others of significant evidence of the value of their property in condemnation proceedings.

*Certain Parcels of Land,* 144 F.2d at 630.

Modern pretrial discovery procedure, properly used, affords opportunity for the investigation of any such contracts which will be offered in evidence. Unlike offers and options, contracts for the purchase of land are binding obligations, not lightly ignored; the fact the contracts have not progressed into sales seems to go to the weight of the evidence rather than to its sufficiency.

*State Roads Commission,* 223 A.2d at 153.

In the instant case, the contract for sale was not just an option. The contract was entered in good faith and was valid and binding upon the parties. The fact that the sales were never completed does not turn the contract into an inadmissible offer. There was a willing seller and a willing buyer who mutually obligated themselves to sell and buy at a price and upon terms specifically agreed upon. Nothing but the final consummation remained. City was allowed to cross-examine the experts in great detail concerning their method of valuation. We cannot hold that the admission of such purchase agreements caused an improper verdict in this case.

We are satisfied that the trial court admitted evidence of these sales as part of the foundation for the expert's appraisal and its admission does not constitute a clear abuse of discretion or reversible error. Although these sales were not finalized, they were of sufficient reliability to be admitted as evidence of the condemned property's value. "[City's] objections go to the weight of such evidence rather than to its admissibility, and the trial court affords opportunity, both by cross-examination and comment to the jury, to bring such evidence to its proper perspective for the jury's consideration." *Certain Parcels of Land,* 144 F.2d at 630.

### ISSUE 6

Was it error for the trial court to allow counsel for Kelleys to use hypothetical questions illustrating their severance issue when cross-examining City's appraiser?

■■■ City also argues that allowing an attorney to use hypothetical questions is error. City has failed to cite any authority to support its position. Arguments that cite no authority violate SDCL 15–26A–60(6) and

may be deemed waived. *Kostel Funeral Home, Inc. v. Duke Tufty Co.*, 393 N.W.2d 449 (S.D.1986). We regard this issue waived.

## ISSUE 7

Did the trial court err in allowing counsel for Kelleys to question potential jurors during voir dire about their relationship to property owners in a drainage district that did not exist?

During discovery, Kelleys obtained a list of property owners included in a drainage district the City Engineer's Office had considered establishing. At voir dire, counsel for Kelleys referred to this drainage district and questioned jurors about their relationships with the property owners and businesses in this area. City contends that Kelleys' reference to this "drainage district" improperly led the jurors to believe that large corporations owning land adjacent to the condemned property were going to pay for the condemnation.

■ As a general rule, argument or evidence of the source of funds to pay the award is improper. Eminent Domain Source of Payment, 19 A.L.R.3d 694 (1968). In support of its argument, City cites *Southern Electric Generating Co. v. Leibacher*, 269 Ala. 9, 110 So.2d 308 (1959). However, this case is clearly distinguishable. *Leibacher* involved a situation in which the trial court erroneously required the condemnor, Southern Electric Generating Company, to prove its right to condemn in the presence of the jury. *Id.* 110 So.2d at 312. While Southern Electric proved its right to condemn, evidence concerning the corporation's financial makeup was disclosed to the jury. "Southern Electric's right to condemn was a preliminary question which the trial court should have determined outside of the presence of the jury." *Id.* In that case, the appellate court correctly concluded that disclosure of such evidence was prejudicial error. *Id.* at 314.

In cases of this kind, the narrow issue for the jury's determination, the amount of the award to the landowners, should not be broadened nor the verdict of the jury influenced by the interjection of immaterial matters, especially matters calculated to be prejudicial. Whether or not the property is necessary or advisable, or whether more property is taken than necessary, and whether or not it is ever paid for or who pays for it, are not questions for the jury to consider nor to be brought before it in any way.

*Id.* at 313.

■ Although we generally agree that the source of payment should not be injected into a condemnation proceeding, voir dire questions regarding the proposed drainage district are not inquiries into the source of payment. To find otherwise would be an exercise in assumptions, conjecture or speculation.

■ During trial, Kelleys asked two questions about the source of payment. City immediately objected and the trial court correctly sustained this objection. There was no other testimony or questioning on this subject. Therefore, we hold that this minor reference does not rise to the level of prejudice requiring a new trial.[3]

## ISSUE 8

Whether the trial court erred in restricting City's cross-examination of a witness called by Kelleys.

City claims the trial court erred by not allowing it to use leading questions when cross-examining a witness called by Kelleys. The trial court restricted City because the witness was a city employee and was not adverse to City's position even though Kelleys called the witness.

■ Generally, leading questions are permitted on cross-examination. SDCL 19–14–20.[4] However, cross-examination as found in

---

3. During closing arguments, City did not object, or move for a mistrial, because of Kelleys' reference to the source of payment. Consequently, these comments are not reviewable by this court on appeal. *Anderson v. Johnson*, 441 N.W.2d 675 (S.D.1989).

4. SDCL 19–14–20 provides:
 Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a

SDCL 19–14–20 does not mean counsel has an unqualified right to ask leading questions of their client's employees. *Matter of Estate of Herm*, 284 N.W.2d 191 (Ia.1979). " 'The majority rule is that generally where an "adverse" witness is shown to be friendly toward or biased in favor of the cross-examiner the reason for the rule, grounded on the assumed hostility of such witness to the cross-examiner's cause, has ceased to exist and leading questions may not be used in examining such witness.' " *Shamburger v. Behrens*, 380 N.W.2d 659, 664 (S.D.1986) (quoting *Estate of Herm*, 284 N.W.2d at 197–98). Permitting the use of leading questions is within the discretion of the trial court. *Tsiolis v. Hatterscheidt*, 85 S.D. 568, 187 N.W.2d 104 (1971).

■ Although the witness in this case was called by Kelleys, the witness was not automatically adverse. At best, it may be argued that this witness may be "identified with an adverse party." Nevertheless, we do not find the restriction to be an abuse of discretion.[5]

## ISSUE 9

Whether the trial court erred in restricting the testimony of City's expert on wetlands.

In this case there was a question whether the Corps of Engineers would issue a 404 permit if this property was declared a wetland. A 404 permit is required to develop federally designated wetlands. City contends that the issuance of a 404 permit was a crucial factor to be considered in appraising the condemned property. City called Jim Oehlerking (Oehlerking) from the Omaha District Corps of Engineers (Corps), the entity responsible for issuing 404 permits.

The record does not indicate whether City called Oehlerking as an expert witness or simply a "resource witness." At trial, City indicated that it intended to call Oehlerking as a "resource person," not as an expert, and not to give opinions but to merely discuss and describe the regulatory processes involved in declaring wetlands and issuing 404 permits.[6] On appeal, City claims that Oehlerking was an expert witness called to rebut the testimony of Kelleys' wetlands expert. City argues the trial court erred when it did not allow City to ask Oehlerking the probability of a 404 permit being issued in this case.

■ City argues that Oehlerking was not an expert retained or consulted specifically for trial preparation and, consequently, he is not subject to the discovery rules for expert witnesses. According to the record City has always claimed Oehlerking as its witness and, in fact, in its brief they refer to him as "the City's expert witness on wetlands." Therefore, he will remain subject to the rules for discovery of expert witnesses.

SDCL 15–6–37(b)(2) authorized the trial court to exclude this expert witness' testimony for failure to comply with a discovery order. City did not disclose the identity of its expert witness until the day before trial, more than five months after the original date set for disclosure of all witnesses. It must be noted that Kelleys also failed to comply with the court-ordered discovery deadlines; however, they were not as delinquent as the city.

SDCL 15–6–37 is designed to compel production of evidence and to promote rather than stifle the truth-finding process. *Magbuhat v. Kovarik*, 382 N.W.2d 43, 45 (S.D. 1986), *modified*, 445 N.W.2d 315 (S.D.1989) (citing *Chittenden & Eastman Co. v. Smith*,

hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

5. When the trial court restricted the use of leading questions, City made no offer of proof from which the trial court, or this court, could determine whether the leading questions were necessary. An offer of proof is a condition precedent to having this court pass upon an allegedly erroneous ruling. *Hedges v. Hedges*, 87 S.D. 425, 209 N.W.2d 660 (1973).

6. City's attorney stated:

What I intend to call him for, and in fact it's a very limited purpose, I expressed to the Corps in writing that my—my promise to them was that I intended to call him as a resource person, not as an expert and not to give opinions. Merely to discuss and describe the regulatory processes involved and that he was familiar with.

286 N.W.2d 314, 316 (S.D.1979)). "The severity of the sanction must be tempered with consideration of the equities. Less drastic alternatives should be employed before sanctions are imposed which hinder a party's day in court and thus defeat the very objective of the litigation namely to seek the truth from those who have knowledge of the facts." *Id.*

 The trial court in this case only restricted City from asking the Corps of Engineers' expert "whether or not he could say with reasonable certainty whether a 404 permit could be issued." After this ruling, City failed to make an offer of proof on what Oehlerking's testimony would be.[7] Where there has been no offer of proof on excluded testimony, and it is impossible to determine whether the party had been prejudiced by the court's ruling, the contention that the court erred in excluding testimony has not been preserved for appeal. *Crilly v. Morris,* 70 S.D. 584, 19 N.W.2d 836 (1945). The trial court specifically allowed City to ask this expert about wetlands and whether or not this land was a wetland. The trial court also permitted City to ask "what people have to do to get a 404 permit." Therefore, we feel that such a minor restriction was justified, keeping in mind the fact that City did not disclose its expert witness for more than one hundred days beyond the court-ordered discovery deadline.

 City complains that the 404 permit is a crucial issue in this case. Before a 404 permit becomes an issue, the property must be declared a wetland by the federal government. Despite this "very important" issue, City failed to include a proposed instruction on wetlands and it did not ask the court to recognize the condemned property as a wetland. It is the duty of the parties to submit proposed instructions for the theory of their case. *Glanzer v. St. Joseph Indian School,* 438 N.W.2d 204 (S.D.1989). City did not call a witness to testify that this was a wetland. Nancy Kagel (Kagel), who was hired by the city to study this property, concluded that the property was a wetland and a 404 permit would be required before it could be developed. City did not call Kagel as a witness for trial, but Kelleys had her deposition read at trial where she testified that "97 to 98 percent of all applications" are approved for a 404 permit. Consequently, judging from City's actions, we do not consider this issue of significant magnitude. The trial court did not commit prejudicial error in restricting Oehlerking's testimony.

### ISSUE 10

Whether the trial court erred in allowing a jury view of the property during jury deliberations.

 City claims error when the trial court granted the jury's request to view the condemned property during their deliberations. SDCL 21-35-16 provides: "Upon the demand of any party to the proceeding, if the court shall deem it necessary, the jury may view the premises under the rules of law for viewing by the jury." The rules of law governing a jury's view of the property are covered in SDCL 15-14-16, which provides:

When *in the opinion of the court* it is proper for the jury to have a view of the property which is the subject of litigation, or of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place which shall be shown to them by some person appointed by the court for that purpose. The jury may be

---

7. THE COURT: Are you going to ask him any opinion about whether a 404 permit will be issued or could have been issued in this case?
CITY'S ATTORNEY: The closest I get to that is I will ask him—
THE COURT: Yes or no, are you going to ask him—
CITY'S ATTORNEY: Not that question.
THE COURT: Are you going to elicit anything about whether a 404 Permit could be issued?
CITY'S ATTORNEY: I'll ask him whether or not he could say with reasonable certainty whether a 404 permit could be issued.

THE COURT: that's an opinion question then, what you are going to ask him. . . .
My ruling is this: I am going to allow the City to call the man—this individual from the Corps of Engineers for a very limited purpose, but I'm not going to let you solicit any questions that have to do with whether a 404 Permit would or would not be issued in this case.
CITY'S ATTORNEY: *Okay.* (Emphasis added.)

given a view of the property or place while the case is being submitted to them or *during their deliberation,* or both, as the court may order. While the jury are thus absent, no person, other than the person so appointed, shall speak to them on any subject connected with the trial. (Emphasis added.)

The trial court granted the jury's request to view the property under SDCL 15–14–16. This statute specifically allows a jury to view the property during its deliberations. Nearly every jurisdiction has either authorized or permitted a view in eminent domain proceedings. Nichols on Eminent Domain, § 18.08. "However, the purpose of the view and the legal effect of its consideration by the factfinder is not uniformly agreed upon." *Id.*

This court has held that the jury's view of property is not evidence. *Grubbs v. Foremost Insurance Co.,* 82 S.D. 98, 141 N.W.2d 777 (1966). "However, we have held that it does enable the trier of facts to more satisfactorily weigh the evidence given in court and is of assistance to him in determining the issues of fact." *Beatty v. Depue,* 78 S.D. 395, 401, 103 N.W.2d 187, 190 (1960); 1 A.L.R.3d 531 (1960). "A view of the premises by a jury in a condemnation proceeding should be denied only for good and cogent reasons." *State Highway Commission v. Bloom,* 77 S.D. 452, 465, 93 N.W.2d 572, 580 (1958). Whether a view is proper and to be ordered rests in the sound discretion of the trial court. *Bean v. Best,* 77 S.D. 433, 93 N.W.2d 403 (1958). We do not find an abuse of discretion in this case.

### ISSUE 11

Whether the trial court erred in failing to instruct the jury (a) as to the burden of proof on claims that the property was adaptable to another use, (b) on the presumption of property's current use as its highest and best use, and (c) on speculation and conjecture.

■■■ The rule is well settled that instructions must be based on the evidence and should be construed as a whole and not in fragmentary parts; and where the instructions, as given, fairly and substantially cover the propositions presented by requested instructions, errors should not be predicated

upon the refusal of the court to give such requested instructions. *Bathke v. Myklebust,* 69 S.D. 534, 538, 12 N.W.2d 550, 552 (1943). City complains that an instruction which states "the present use of the property is presumed to be its highest and best use and the burden of proof is on the defendant to show that the property is adaptable for another use" should have been given. However, this is not the applicable law for a condemnation suit. This instruction is normally used when recovering past damages from inverse condemnation not value in a regular condemnation action. *City of Brookings v. Mills,* 412 N.W.2d 497 (S.D.1987). This court is committed to the rule that to entitle a party to a particular instruction it must correctly state the law. *Id.* (citing *Aaker v. Quissell, et al.,* 60 S.D. 513, 244 N.W. 889 (1932)).

■■■ Although the trial court did not adopt City's proposed instructions defining speculation and conjecture, after examining the instructions given by the trial court, it is apparent that they adequately embody the ideas in City's proposed instructions. More specifically, the instructions given allowed the jury to consider the adaptability of the land, and its most advantageous and valuable use, but prohibited the use of speculation and conjecture. "Instructions are adequate when, considered as a whole, they give a full and correct statement of the applicable law." *Jahnig v. Coisman,* 283 N.W.2d 557, 560 (S.D.1979) (citing *Mueller v. Mueller,* 88 S.D. 446, 221 N.W.2d 39 (1974)). It is not error to refuse to amplify instructions given which substantially cover the principle embodied in the requested instruction. *Egan v. Sheffer,* 86 S.D. 684, 201 N.W.2d 174 (1972); *Jorgenson v. Dronebarger,* 82 S.D. 213, 143 N.W.2d 869 (1966); *Peters v. Hoisington,* 72 S.D. 542, 37 N.W.2d 410 (1949).

### ISSUE 12

Whether the trial court erred in allowing counsel to argue matters of law during closing arguments.

■■■ City claims that the trial court allowed counsel to argue matters of law which were not included in the instructions. How-

ever, City never objected to these statements during closing arguments. We have held that such objections must be made to the trial court in order to allow it to correct its mistakes and an objection not properly raised below cannot be reviewed by this court on appeal. *See Anderson v. Johnson,* 441 N.W.2d 675 (S.D.1989); *Till v. Bennett,* 281 N.W.2d 276 (S.D.1979); *see also State v. Carlson,* 392 N.W.2d 89 (S.D.1986); *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525 (S.D.1986); *Johnson v. John Deere Company,* 306 N.W.2d 231 (S.D.1981); *Arbach v. Gruba,* 89 S.D. 322, 232 N.W.2d 842 (1975). Accordingly, on the status of this record, the trial court was not given an opportunity to rule on this objection and therefore it is waived. *Matter of A.I.,* 289 N.W.2d 247 (S.D.1980).

## ISSUE 13

Did the trial court properly assess the taxation of costs against City?

City argues that the trial court erred in assessing the taxation of costs. Taxation of costs in condemnation proceedings under eminent domain is controlled by SDCL 21–35–23, which provides:

> If the amount of compensation awarded to the defendant by final judgment in proceedings pursuant to this chapter is twenty percent greater than the plaintiff's final offer which shall be filed with the court having jurisdiction over the action at the time trial is commenced, and if that total award exceeds seven hundred dollars, the court shall, in addition to such taxable costs as are allowed by law, allow reasonable attorney fees and compensation for not more than two expert witnesses, *all as determined by the court.* (Emphasis supplied.)

It is a fundamental rule of statutory construction that all provisions within a statute must be given effect, if possible. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292 (S.D.1982). Statutes are to be construed by their intent as determined from the statute as a whole and its enactments. *Brishky v. State,* 479 N.W.2d 489 (S.D.1991).

City's final offer to Kelleys, which was filed prior to trial, was $139,000 and the jury ultimately returned a verdict for $450,000; thus, the requirement that the award be "twenty percent greater than the plaintiff's final offer" is met.

City argues that the trial court erroneously assessed as costs a sum in excess of $7,000 as expert witness fees for Kelleys. City claims that expert witness fees are limited by SDCL 19–5–1 pursuant to *Wolken v. Bunn,* 422 N.W.2d 417 (S.D.1988). In *Wolken,* this court restricted the award of expert witness fees to the statutory limit set out in SDCL 19–5–1. That statute limits a witness' compensation to $20 a day and $.21 per mile. However, *Wolken* is dissimilar to the case before us.

In *Wolken,* the award of expert witness fees was through the discretionary provisions of SDCL ch. 19–15. Therefore, any award of expert witness fees was limited by the constraints of SDCL 19–5–1. This case is a condemnation case which falls squarely within the provisions of SDCL ch. 21–35.[8] SDCL 21–35–23 specifically awards compensation "for not more than two expert witnesses." Assessing the expert witness fees as costs is required and is not an abuse of discretion provided the fees are reasonable. The record does not indicate whether the trial court determined that these expert witness fees were reasonable. *City of Winner v. Bechtold Investments,* 488 N.W.2d 416 (S.D.1992). Therefore, we remand to the trial court for a determination and assessment of reasonable expert witness fees.

City also claims the trial court incorrectly assessed as costs the sum of $243.82 for photographs and an enlarged map of the condemned area. In *State Highway Comm.,* 82 S.D. at 45, 140 N.W.2d at 689–90, this court denied expenses for obtaining photographs. We held, "to allow the expense of obtaining photographs to be taxed against an unsuccessful litigant might open the door to a 'pandora's box' with wide variations between circuits and judges within the same circuit as

---

**8.** If expert witness fees were simply statutory under SDCL 19–5–1 what would need to be

"determined by the court" as stated in the statute?

to what is allowable and in what amount." *Id.* Although the statute for assessing miscellaneous costs has been repealed since the time of trial,[9] it is our opinion that the sum of $243.82 for photographs and maps used at the trial should not have been taxed as costs against City and this amount is disallowed and must be deducted from the final judgment.

### ISSUE 14

Did the trial court use the correct method in assessing reasonable attorney fees as costs?

"As a general rule, attorney fees may only be awarded by contract or when specifically authorized by statute." *O'Connor v. King,* 479 N.W.2d 162, 166 (S.D.1992) (citing SDCL 15–17–7; *Assman v. J.I. Case Credit Corp.,* 411 N.W.2d 668 (S.D.1987)). SDCL 21–35–23 provides an award of reasonable attorney fees to the defendant in a condemnation suit if the final judgment is twenty percent greater than the plaintiff's final offer. It is undisputed that the final judgment in this case mandates the award of reasonable attorney fees. "The formula indicates that the legislature meant to discourage the condemnor from making inequitably low jurisdictional offers." *Standard Theatres v. State, Dept. of Transp.,* 118 Wis.2d 730, 349 N.W.2d 661, 668 (1984). The only language referring to the award of attorney fees explains that they must be "reasonable." There is absolutely no restriction in the statute implying that reasonable refers only to fees calculated on an hourly basis. *Id.*

In this case, Kelleys claim that the contingent fee arrangement with their attorney is reasonable simply because the majority of attorneys enter into similar agreements in condemnation actions. " 'However, while such contingent fee arrangements may be perfectly valid and proper as between an attorney and his client, it does not necessarily follow that such fee is a reasonable fee to be taxed against the party taking private property for a public use, as permitted under [SDCL 21–35–23].' " *City of Bismarck v.*

*Thom,* 261 N.W.2d 640, 643 (N.D.1977) (quoting *Municipal Airport Authority of City of Fargo v. Stockman,* 198 N.W.2d 212, 217 (N.D.1972)).

In deciding what is a reasonable attorney fee, the trial court should consider several parameters which affect the value of legal services, such as:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Model Rules of Professional Conduct, Rule 1.5

"... The fee should not be based on any one single factor but all of these matters should be taken into consideration. The only requirement is that the fee which the court fixes in each case must be reasonable for the services rendered ...

In the case before us, the court arrived at the amount of the attorney's fee to be awarded solely on the basis of the contingent-fee contract."

*City of Bismarck,* 261 N.W.2d at 642 (quoting *Morton County Board of Park Commissioners v. Wetsch,* 136 N.W.2d 158 (N.D. 1965)).

We should note that under SDCL 21–35–23, where the fee is in addition to the award, no safeguard or incentive exists for the land-

---

9. SDCL 15–17–4. Miscellaneous fees and evidentiary expenses allowable as costs. Repealed by 1992 S.D.Sess.L. ch. 148, § 26.

owner to arrange for reasonable attorney fees as would be the case if the fee were paid by the landowner out of the award or recovery. *City of Bismarck*, 261 N.W.2d at 643.

We are not under the illusion that a 'just and adequate' fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees. However, we are convinced that this simple mathematical exercise is the only legitimate starting point for analysis. It is only after such a calculation that other, less objective factors, can be introduced into the calculus.

*City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 471 (1974).

We recognize that it is virtually impossible to set out every conceivable item that should be considered. If the trial judge finds justification or reason to include something else of significance, he should state those reasons and justifications for inclusion in his ultimate determination. *City of Bismarck*, 261 N.W.2d at 646.

We conclude that a reasonable fee in certain instances may be in excess of what a one-third contingency fee would produce or it may be less. It is the reasonableness of the fee, and not the arrangements the attorney and his client may have agreed upon, which is controlling. Whenever the fee is to be assessed and included in the judgment, as is provided for in [SDCL 21-35-23].

*Id.* at 645-46.

■ After reviewing the record, we are convinced that the one-third contingency fee agreement between Kelleys and their attorney does not establish a reasonable fee for this case, since it is only one factor to be considered in determining what a reasonable fee is. It is important to note that this decision on attorney fees would not affect the attorney fee arrangement between Kelleys and their attorney. It may only affect the amount that City, as condemnor, is required to pay the Kelleys for attorney fees. Therefore, we remand for the trial court to award "reasonable attorney fees" consistent with this opinion.

## ISSUE RAISED ON CROSS-APPEAL

Should the trial court have awarded an allowance for prejudgment interest?

■ On cross-appeal, Kelleys claim that the trial court erred in disallowing prejudgment interest. Although determining the point of time from which interest is to be computed varies in the different states, South Dakota only allows prejudgment interest when the exact amount of damages is known or readily ascertainable. *State v. Ed Cox & Son*, 81 S.D. 165, 180, 132 N.W.2d 282, 290-91 (1965). Prejudgment interest is not to be awarded if the damages are uncertain until determined by the trier of fact. *Arcon Const. Co. v. S.D. Cement Plant*, 349 N.W.2d 407, 416 (S.D.1984). "Thus, the test for awarding interest is not whether liability was clear, but whether (assuming liability) the damages were reasonably ascertainable by reference to prevailing markets." *Cole v. Melvin*, 441 F.Supp. 193, 210 (D.S.D.1977).

■ The denial of prejudgment interest is especially appropriate in a condemnation proceeding, because the proceeding may be voluntarily dismissed by the condemnor after a verdict is rendered in favor of the condemnee, but prior to the entry of judgment upon the verdict. *City of Aberdeen v. Lutgen*, 273 N.W.2d 183 (S.D.1979). Therefore, the trial court did not abuse its discretion when it denied Kelleys' motion for prejudgment interest.

In conclusion, we affirm the award of just compensation as determined by the jury, but reverse and remand to the trial court for a determination of reasonable expert witness and attorney fees consistent with this opinion.

WUEST, J., concurs.

SABERS, J., and STEELE, Circuit Judge, concur in part and dissent in part.

HENDERSON, J., dissents in part and specially concurs in part.

STEELE, Circuit Judge, sitting for MILLER, C.J., disqualified.

SABERS, Justice (concurring in part and dissenting in part).

I concur in all respects except that I dissent on the denial of prejudgment interest. SDCL 21–1–13.1 provides in part that "[a]ny person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred[.]" And SDCL 21–35–25 provides:

> Title to the property interest specified in the declaration shall vest in the petitioner and the property interest shall be deemed condemned and taken for the use of the petitioner. *The right to just compensation for the property interest shall vest in the persons entitled thereto either on the date the decision is rendered at the hearing provided in § 21–35–10.1 or the date the hearing is waived.* (Emphasis added.) *

The purpose of the interest statutes is to compensate the Kelleys, as property owners, for the loss of the use of the money for the property taken by law on February 4, 1991 or by stipulation and waiver on June 3, 1991. *See generally Honomichl v. Modlin,* 477 N.W.2d 599 (S.D.1991) ("[T]he purpose of awarding prejudgment interest is to do justice to one who has suffered a loss at the hands of another person. The true principle, which is based on the sense of justice in the business community and our statute, is that he who retains money which he ought to pay another should be charged interest upon it.")

Judge Kean found, as a matter of law, that the date of the taking was February 4, 1991, and so instructed the jury. The date of the stipulation and waiver of hearing on the necessity of the taking was June 3, 1991, which, under SDCL 21–35–25, vested title in the City. As Kelley's brief persuasively argues, the interest statute, SDCL 21–1–13.1, and the just compensation statute, SDCL 21–35–25, require interest be paid from June 3, 1991, the date the stipulation and waiver of

taking was signed and the right to just compensation for the property interest vested in the Kelleys, until judgment, less credit for the deposit. We should reverse and remand for the purpose of properly determining prejudgment interest.

STEELE, Circuit Judge (concurring in part and dissenting in part).

I concur with the majority on issues 3 and 5 through 14, but dissent on issues 1, 2, and 4. I would reverse and remand for a new trial because the jury award was based upon the improper measure of damages, and because the real issue between the parties was whether a de facto taking occurred, which issue was never litigated.

## MEASURE OF DAMAGES

The trial court established the date of the taking as February 4, 1991, the date the city passed its condemnation resolution. At that time the only property the Kelleys owned was the condemned parcel. The measure of damages when an entire parcel is condemned is its fair market value at the time of the taking. *Rapid City v. Baron,* 88 S.D. 693, 227 N.W.2d 617 (1975); *City of Huron v. Jelgerhuis,* 77 S.D. 600, 97 N.W.2d 314 (1959).

The problem in this case is one of timing. The City and the Kelleys started negotiations long before the time of the sale of the KFC parcel. Prior to the sale, the property the Kelleys owned was large and the KFC parcel supplied street frontage access, making it a valuable parcel. All of the appraisals were performed when the Kelleys owned the large tract. Knowing what part of the large parcel the City wanted, the appraisers used the measure of damages applicable to partial taking. That measure is the difference between the fair market value of the entire tract immediately before the taking and the fair market value of what remains after the taking. *State Highway Commission v.*

---

\* SDCL 21–35–10.1 provides:

> Within thirty days from the date the summons described in § 21–35–9 is served, the defendant may demand a hearing in circuit court on the petitioner's right to take. Failure to make such demand or to consent in writing to the taking, within the thirty-day period, shall constitute a waiver of the right to question the necessity of the taking. The finding of necessity by the plaintiff, unless based upon fraud, bad faith or an abuse of discretion, shall be binding on all persons.

*Hayes Estate,* 82 S.D. 27, 140 N.W.2d 680 (1966).

The measure of damages for a partial taking includes compensation both for what is taken and for the diminution in the fair market value of the remainder; the two elements of damages are integrated and inseparable. *Hayes Estate, supra.* The purpose of this measure is to allow compensation to the owner when the value of the whole tract before a taking exceeds the sum of the values of the property taken and its severed remainder after the taking.

The measure may be illustrated by an equation. "A" is the fair market value of the whole tract before the taking. "B" is the fair market value of the property taken after the taking. "C" is the fair market value of the severed remainder after the taking. "D" is the diminution in the fair market value of the severed remainder after the taking. $A = (B + C + D)$. The elements on the right side of the equation are inseparable. B and D are the elements that the owner receives money compensation for; C is the remainder property which the owner retains.

The Kelleys sold all of the remainder of their property before the established time of taking. Therefore, the only parcel which should have been valued by the jury was the condemned parcel. That parcel was isolated and had no street access. Yet all of the testimony, including that of Daryl and Donald Kelley, save one opinion rendered by a city appraiser, included compensation for *both* the parcel condemned *and* for the diminution in the fair market value of the parcel sold to KFC. The one appraiser who valued just the condemned parcel placed its fair market value (FMV) at $219,300. The jury's verdict was for $450,000; therefore the jury obviously accepted valuations based on a partial taking.

As an example of the fallacy in the partial taking approach in this case, Kelleys' appraiser valued the entire parcel as it existed before the KFC sale at $692,908 and the FMV of the KFC parcel after the taking at $224,044 to arrive at his opinion of compensation due at $468,864. The last figure inherently includes all elements on the right side of the above equation—the value of the property taken, the remainder property, and the diminution in the value of the remainder because of the severance.

At the time of the trial, the "remainder" property (the KFC parcel) had been sold at what Kelleys concede was at FMV, but there was no evidence submitted of its sale price (C in the equation). The only evidence of the FMV of the condemned property (B in the equation) was the opinion of one of the City appraisers, and there was no evidence of whether the KFC parcel was at all diminished in value because of its severance (D in the equation).

The sale of the KFC parcel before the established time of taking skews the partial taking approach, because its actual sale price must be inserted in the equation. That being the case, elements B and D must be considered separately, and that was not done here. Therefore, there is a real possibility of a substantial error in valuation under the circumstances of this case.

The simple fact remains that because the Kelleys owned only the detention pond parcel at the established time of the taking, this was not a partial taking case, and only the FMV of the condemned parcel should have been determined.

## DE FACTO TAKING

The heart of the dispute between the parties is that Kelleys contend that the City interfered with their use and enjoyment of the property to the extent that there was a taking long before they sold the KFC parcel. The City insists with equal vigor that a taking did not occur until the condemnation resolution was passed.

When a governmental authority substantially interferes with the property interests of the owner prior to initiating formal condemnation proceedings, a taking may occur at that time. *Hurley v. State,* 81 S.D. 318, 134 N.W.2d 782 (1965); *City of Brookings, supra.* This is sometimes referred to as a "de facto taking."

The general elements of proof to establish a de facto taking are: (1) substantial government action; (2) a causal link between the

action and the damage claimed; and (3) resulting injury. The burden is on the claimant to establish these elements by substantial evidence. *City of Brookings, supra.*

The trial court established the date of the taking as February 4, 1991 (*after* the Kelleys had sold all of their remaining property), and so instructed the jury. How that date was established is not clear from the record. If the Kelleys contend that the time of the taking was before they sold the KFC parcel, then they would be entitled to use a partial taking approach, but they must establish the time of taking to the trial court. It does not appear that the issue of whether there was a de facto taking, and if so, the time thereof, was ever litigated. Kelleys bore the burden to show a de facto taking by substantial evidence. They in effect obtained a verdict based upon a de facto taking without having to provide proof thereof. The City preserved the issues by making timely motions to exclude and to strike the proffered testimony.

For the above reasons, I would reverse and remand for a new trial.

HENDERSON, Justice (dissenting in part, specially concurring in part).

There are 14 separate issues briefed by the Kelleys. Having reviewed these and the arguments and authorities thereon, I am convinced that the City of Sioux Falls did not have a fair trial. Therefore, I cannot join the majority opinion in affirming a judgment against the City of Sioux Falls for $450,000. The following are prejudicial errors which I believe justify a new trial:

1. *Permitting counsel for Kelleys to question potential jurors, during voir dire, concerning their relationship to property owners in a drainage district which did not exist.*

City properly objected to references to a proposed drainage district or its membership. During trial, references to a proposed drainage district were made to get across the point that the property owners would be paying for the purchase of Kelleys' property. The source of funds to pay for the property being acquired is improper in any condemna-

tion case. *See* R.W. Gascoyne, Annotation, *Propriety and Effect, in Eminent Domain Proceeding, of Argument or Evidence as to Source of Funds to Pay for Property,* 19 A.L.R.3d 694, 697 (1968). Kelleys were able to convince the jury that the source of funds would be from well-heeled adjoining businesses such as Sam's, Wal–Mart, and Menard's. This was not true as the money was going to come from the pockets of the taxpayers in the City of Sioux Falls. In truth and in fact, the drainage district did not exist. Therefore, reference to such a nonexistent fact, in voir dire, and during trial, was totally incompetent, irrelevant, and immaterial evidence in the condemnation proceeding. Such type of testimony was introduced to build damages and was an improper injection of evidence which prevented the taxpayers of the City of Sioux Falls from having a fair trial. Trial court failed to exclude this type of testimony. Had this testimony been excluded, in my opinion, there would have been a different verdict. My authority is the unanimous opinion of *Shaull v. Hart,* 327 N.W.2d 50, 53 (S.D.1982), written by this special writer, which base holding is "prejudicial error is that error without which the jury would have probably returned a different verdict."

2. *Precluding the City of Sioux Falls from bringing in its side of the case on the "wetlands" issue.*

It appears that there existed a paramount issue concerning "wetlands." During oral argument in this Court, one of Kelleys' attorneys expressed: "The City said this land was wetlands. Much of the lawsuit was tried over wetlands." And, per Kelleys' attorney, the "City lost the battle." Issue 9, raised by the City of Sioux Falls' brief, focuses on this issue and explains that the trial court was very unfair in permitting Kelleys' version to get before the jury but refused to allow the City of Sioux Falls to get its points across on "wetlands." Again, we witness prejudicial error. *Shaull,* 327 N.W.2d at 53.

An environmental consultant testified, at great length, on the wetlands issue for the Kelleys. When the City attempted to call its expert to the stand, Jim Oehlerking of the

Omaha District Corps of Engineers, Kelleys objected to his testimony. Thereupon, the trial court restricted the City from fully presenting Oehlerking's testimony. City of Sioux Falls attempted to refute Miller's testimony. Trial court refused to permit the City from asking questions, and eliciting evidence which had probative value on the issues in the case. Due to bureaucratic folderol, the City of Sioux Falls had a great deal of trouble in having an employee of the Corps of Engineers testify in this case.

It is axiomatic that a jury should hear both sides of a case. Facts do not cease to exist by simply ignoring them. It is true that a trial court has discretion in admitting the opinion of an expert. SDCL 19–15–2; *Stormo v. Strong*, 469 N.W.2d 816 (S.D.1991). However, a trial court can abuse its discretion in such a ruling. There was skirmishing to preclude Oehlerking from testifying. After this litigation was commenced, both counsel for the City and Kelleys had informally consulted with Oehlerking about the "wetlands" issue. Therefore, there was certainly no surprise to the Kelleys. City had the right to present its side of the case, through this witness, on the "wetlands" issue. Precluding the City from bringing in its side of the case prejudiced its right to have a fair trial. Testimony of Oehlerking would have aided the jury in deciding one of the major issues in this case. As counsel for Kelleys argued before this Court at the State Capitol, "Much of the lawsuit was tried over wetlands." In my opinion, the trial court abused its discretion by not permitting the City of Sioux Falls to present its case on the "wetlands" issue and requires reversal. *Shamburger v. Behrens*, 380 N.W.2d 659 (S.D.1986). It was a paramount issue in this jury trial. This evidentiary error was dynamite against the City of Sioux Falls and this Court should not tolerate such an abuse to any litigant. Prejudicial error is that which in all probability must have produced some effect upon the final result and affected the rights of a party assigning it. *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529 (S.D.1983). This was a unanimous decision, authored by this special writer, a decade ago. Justice must be even-handed. Unfortunately, that is not the case here.

3. *The trial court used the wrong methodology on damages.*

Facts reflect that the City of Sioux Falls was engaged in a planning process. As this process was evolving, Kelleys were reacting to the process and began to sell parcels of property which had frontage for a great amount of money. Obviously, Kelleys received what they believed was fair market value for these pieces of property. *See Rapid City v. Baron*, 88 S.D. 693, 227 N.W.2d 617 (1975) (The measure of damages when an entire tract is condemned is the fair market value of the tract at the time of the taking). In actuality, Kelleys were selling off parts of the whole. Having done so, Kelleys sued in inverse condemnation. However, trial court would have no part of it and dismissed the inverse condemnation.

Kelleys then conceptually whirled and, in this lawsuit, now maintain there is a partial taking (back, you see, to the concept of "you pay us for taking part of the whole"). This all presumes a "defacto" taking which did not occur. And that was the ruling in the lawsuit on inverse condemnation. Said another way, Kelleys were trying to get in the back door when they could not get in the front door—on the issue of damages. For years, Kelleys were selling off parcels of this entire tract of land. Kelleys originally owned the entire tract. This case is simply not a partial taking case.

Kelleys are not entitled to severance damages or consequential damages. Nay, long ago, they, themselves, severed the whole tract, carving it into parcels selling them for big bucks. Severance damages are properly allowable when there has been a partial taking and they are then included in the value of the property taken. Conceptually, they simply cannot be set aside—segregated if you will—from damage to the remainder. You cannot isolate them. *See State Highway Commission v. Hayes Estate*, 82 S.D. 27, 140 N.W.2d 680 (1966). Therefore, evidence was permitted to go before the jury on the wrong methodology of damages; i.e., to permit damages on a partial taking theory. Evidence confused the jury on the value of the

property which the City of Sioux Falls was, in reality, acquiring. *City of Huron v. Jelgerhuis,* 77 S.D. 600, 97 N.W.2d 314 (1959). In a nutshell, the facts do not substantiate a partial taking case and we have, before us, a runaway horse on damages. An appellate court should rein in this runaway horse by giving the citizens of Sioux Falls a fair shake.

### 4. *Not permitting leading questions on cross-examination.*

It is a well-settled evidentiary rule that ordinarily leading questions should be permitted on cross-examination. SDCL 19–14–20. In *Maiden v. Boyd,* 36 S.D. 451, 155 N.W. 187 (1915), this Court held that to test the correctness of a witness' conclusion, a thorough cross-examination should be allowed. In this case, Kelley subpoenaed Rod Liesinger, an employee of the City of Sioux Falls.

During cross-examination by the City, Kelley objected to a question because it called for a legal conclusion. The trial court sustained the objection and additionally remarked that leading questions would not be permitted because Liesinger was a city employee. Note that Kelley's objection concerned a legal conclusion; the trial court's remark on "leading questions" was pulled out of thin air.

Under *Shamburger,* 380 N.W.2d at 664, when a witness is shown to be friendly or biased in favor of the cross-examiner, the presumed hostility of such a witness to the cross-examiner's cause ceases to exist and leading questions may not be used in examining the witness. For the trial court to make its ruling, Kelley had the burden to object based on *Shamburger.* Rather, the trial court made no determination that Liesinger was biased in favor of the cross-examiner, nor did Kelley make such a claim. A city employee, by virtue of his employment, is not necessarily exempt from cross-examination.

Footnote 5 of the majority opinion strangely argues that a cross-examiner has the burden to prove why leading questions are needed on cross-examination, and cites *Hedges v. Hedges,* 87 S.D. 425, 209 N.W.2d 660 (1973) for: "An offer of proof is a condition precedent to having this court pass upon an alleg-

edly erroneous ruling." However, such an offer refers to *the exclusion of evidence. Hedges,* 209 N.W.2d at 664; *Darrow v. Schumacher,* 495 N.W.2d 511 (S.D.1993). The trial court was not excluding evidence here. Contrary to the majority opinion, any burden required here belongs to Kelley.

On the outset, the ruling robbed City of a tool to test Liesinger's testimony and credibility. Nevertheless, despite the trial court's ruling, the record reveals that the City continued to ask leading questions without objection over the subsequent 25 pages of transcript. Thus, the trial court's ruling, completely prejudicial per *Shaull,* 327 N.W.2d at 53, became harmless, especially when compared to the prejudicial errors previously cited herein.

### 5. *Attorney's fees were unreasonable.*

Furthermore, the award of attorneys fees to Kelley's attorney is shocking. Counsel for the City of Sioux Falls vigorously objected to a requested sum of $100,000 by way of a contingent fee. Under settled law in South Dakota, an attorney has the burden of establishing that the charged fee is justified and reasonable. *Matter of Estate of Lingscheit,* 387 N.W.2d 738 (S.D.1986). A contingent fee agreement does not, per se, equate with a reasonable attorney fee. In my opinion, the trial court must have a hearing on attorneys fees and establish what constitutes a reasonable attorney fee based upon quantum meruit. *City of Aberdeen v. Lutgen,* 303 N.W.2d 372 (S.D.1981). Although this Court may honor an agreement on an attorney's fee, if it is fairly negotiated between the parties, "the actual fee charged is still subject to the scrutiny of the Court for reasonableness." *Matter of Estate of Hansen,* 366 N.W.2d 852 (S.D.1985).

Therefore, the City of Sioux Falls and its citizens are entitled to a new trial because of the compounding prejudicial effect of the errors expressed above. These errors confused the jury and caused the jury to render an excessive and unjust verdict.